(96 N. W. Rep. 258.)

---

### FORESTER *v.* VAN AUKEN.

Opinion filed July 1, 1903.

**Reformation of Instruments—Parol Evidence.**

> 1. Courts of equity have power to reform written instruments to conform to the true intention of the parties, and parol evidence is admissible for that purpose.

**Deed Declared a Mortgage on Mistake Only When It is Mutual.**

> 2. In an action to reform a warranty deed to conform to the intentions of the parties that it was to be a mortgage on the ground that

there was a mistake, courts of equity will not grant the relief, in the absence of fraud, unless it clearly appears that the mistake was a mutual one.

### Evidence Must Be Clear, Specific and Convincing.

3. In such a case the evidence must be clear, satisfactory, specific, and convincing that there was such a mistake, or the relief will be denied.

### Consideration in Deed Not Conclusive.

4. The consideration expressed in a deed is not conclusive as to the real consideration for the transfer, and may be inquired into, and matters not expressed in the deed considered in determining whether the consideration was grossly or manifestly inadequate.

### Inadequacy of Price, Evidence Only.

5. Mere inadequacy of price is not alone ground for declaring a deed to be a mortgage, but, if grossly inadequate, is a circumstance to be considered in determining what the intentions of the parties were.

### Evidence Insufficient.

6. Evidence considered, and *held* not to warrant a decree declaring a deed to be a mortgage.

Appeal from District Court, Barnes County; *S. L. Glaspell,* J.

Action by Jennie A. Forester against Belle R. Van Auken. Judgment for defendant, and plaintiff appeals.

Affirmed.

*C. L. Harris* and *Lockerby & White* (*E. H. Wright,* of counsel), for appellant.

A deed absolute on its face but intended as a trust deed, may be reformed to express the relation and intention of the parties. Rev. Codes 1899, section 4703. *Pugh* v. *Davis,* 96 U. S. 333, 24 L. Ed. 775; *Farmer* v. *Grose,* 42 Cal. 169; *Hickman* v. *Cantrell,* 9 Yerg. 171; *Teal* v. *Walker,* 111 U. S. 242, 28 L. Ed. 415; *Rodgers* v. *Sanders,* 16 Me. 92; *Patterson* v. *Blumer,* 35 Conn. 57; *Walden* v. *Skinner,* 101 U. S. 577, 25 L. Ed. 963; *Gunter* v. *Janes,* 9 Cal. 643; *Mullard* v. *Hathaway,* 27 Cal. 191; *Roach* v. *Carrafa,* 85 Cal. 436, 25 Pac. Rep. 22; *Tapia* v. *Demartina,* 77 Cal. 383, 19 Pac. Rep. 641; *Lockwood* v. *Canfield,* 20 Cal. 126, 2 Devlin on Deeds, 1136. There can be no difference between a trust deed and a mortgage security, where the writing is silent, as we have it in this case. 26 Am. & Eng. Enc. of Law 860; Boone on Mortgages 96, 226; *Lockwood*

v. *Canfield,* 20 Cal. 126. If a deed can be reformed and declared a mortgage by resort to parol evidence, then deed, absolute on its face, can be shown to be a trust deed, and parol evidence resorted to for that purpose. *Gunter* v. *Janes,* 9 Cal. 643; *Mullard* v. *Hathaway,* 27 Cal. 191; *Hayne* v. *Hermann,* 97 Cal. 259, 32 Pac. Rep. 177. A written instrument, executed under the misapprehension that it embodies an agreement, whereby the mistake of the draughtsman as to law or fact it fails of its purpose, equity will reform in accordance with the contract. *Truesdale* v. *Lehman,* 47 N. J. Eq. 218, 20 Atl. Rep. 319; *Keister* v. *Meyers,* 17 N. E. Rep. 161; *Adams* v. *Wheeler,* 122 Ind. 257, 23 N. E. Rep. 760; *Knight* v. *Glasscock,* 51 Ark. 390, 11 S. W. Rep. 580; *Andrew* v. *Andrew,* 81 Me. 339, 17 Atl. Rep. 166.

While oral evidence is not admissible to vary a written instrument, such evidence is admissible to show that, by reason of fraud, mistake or accident, the instrument fails to show the true intent of the writing; and when mistake, fraud or accident clearly appears, equity will rectify. *Rogers* v. *Sanders,* 16 Me. 92; *Patterson* v. *Bloomer,* 35 Conn. 57; *Waldron* v. *Skinner,* 101 U. S. 577, 25 L. Ed. 963; *Gunter* v. *Janes,* 9 Cal. 643; *Andrews* v. *Gillespie,* 47 N. Y. 491. Courts of equity reform contracts, courts of law act on them as they find them. *Nance* v. *Metcalf,* 1 West Rep. 443, 19 Mo. App. 183; *Loss* v. *Orby,* 22 N. J. Eq. 55. Equity will reform when the mistake occurs from either ignorance, forgetfulness, unconsciousness, or belief in a thing which does not exist. 2 Pom. Eq. Jur. 299; *Briggs* v. *Vanderbilt,* 19 Barb. 222; *Durgan* v. *Cranston,* 7 Johns. 442; *McDaniels* v. *Bank of Rutland,* 29 Vt. 248; *Ewell* v. *Chamberlain,* 4 Bosw. 320; *Rhell* v. *Hick,* 25 N. Y. 289; *Ketchum* v. *Bank of Commerce,* 19 N. Y. 502; *Belknap* v. *Sealey,* 14 N. Y. 143; *Martin* v. *McCormick,* 8 N. Y. 335; *Gardner* v. *Troy,* 26 Barb. 423; *Kip* v. *Monroe,* 29 Barb. 579; *Wedon* v. *Olds,* 20 Wend. 174.

*Winterer & Winterer,* for respondent.

Mistake must be mutual. *Life Ins. Co.* v. *McMarter,* 87 Fed. 63; *Stewart* v. *Gordon,* 53 N. E. Rep. 797; Bispham Eq. section 469.

All declarations of trust in land should be proven by some writing signed by the declarant, or be void; but resulting trusts, or trusts created by operation of law need not be in writing, and may be proved by parol. *Williams* v. *Williams,* 180 Ill. 361, 54 N. E. Rep. 229; *Cameron* v. *Nelson,* 77 N. W. Rep. 771; *Arnold* v. *Ellis,* 48 S.

W. Rep. 883; *Rogers* v. *Rogers*, 39 Atl. Rep. 755; *Fitzgerald* v. *Fitzgerald*, 47 N. E. Rep. 431; *Hamilton* v. *Hall's Estate*, 69 N. W. Rep. 484; *Meyers* v. *Meyers*, 47 N. E. Rep. 309; *Klamp* v. *Klamp*, 70 N. W. Rep. 525; *Luce* v. *Reed*, 65 N. W. Rep. 91; *Thomas* v. *Thomas*, 67 N. W. Rep. 182; *Goelz* v. *Goelz*, 41 N. E. Rep. 756; *Sherman* v. *Sandell*, 39 Pac. Rep. 797; *McCahill* v. *McCahill*, 25 N. Y. S. 219; *Patterson* v. *Boswell*, 36 N. E. Rep. 845; *Beavers* v. *Mc-Kinley*, 33 Pac. Rep. 359; *Renz* v. *Stoll*, 54 N. W. Rep. 276; *Smith* v. *Mason*, 55 Pac. Rep. 143.

MORGAN, J.  This action is brought to recover the possession of certain real estate situated in Valley City, N. D., and to reform the terms of a deed of such property executed and delivered to the defendant by the plaintiff on August 21, 1893. The complaint alleges that it was mutually agreed between the parties that plaintiff should execute to defendant a trust deed of said real estate; that the ownership of the same should be vested in the plaintiff, but that the defendant was to have full possession and control thereof, lease it, collect rents, pay taxes, and keep buildings insured and in good repair; that out of the money coming into defendant's hands from rents collected, the defendant was to pay such taxes, insurance, expenses of repairs, and to pay a mortgage of $2,000, then in force upon one lot and the brick building situated thereon, and out of such money collected was also to pay herself a certain note given to her by plaintiff and her husband in 1891 for $800; that upon the payment of such debts according to such agreement possession of such premises should be restored to plaintiff, and the same reconveyed to her by a warranty deed. These are substantially the allegations of paragraph 3 of the complaint.  The complaint further states: "That in pursuance of said agreement this plaintiff conveyed to the said defendant, by a deed of warranty, in writing, the premises hereinbefore described;   *  *  *   that through the inadvertance and mistake of this plaintiff and the defendant the conditions mentioned and specified in paragraph 3 of this complaint were not inserted in said deed, but said deed was intended by plaintiff and defendant as a   trust deed or mortgage security, under which said defendant might carry out the conditions and covenants mentioned and described in said paragraph 3 of this complaint, but said deed does not express the true and real intention of this plaintiff and said defendant by reason of said omission." The prayer of the complaint is for an ac-

counting and a reconveyance, and for such other and general relief as may be necessary and proper under the evidence. The complaint states many other facts bearing on this cause of action, but the substance of the cause of action is as stated. The answer alleges that the said property was sold to the defendant for a valuable consideration, and conveyed to her by said warranty deed; that such sale was an absolute sale, and contained no contemporaneous, prior, or subsequent stipulations or agreements for a reconveyance, and contained no agreement that the transfer was made in trust or for security purposes. The trial court made findings of fact and conclusions of law in favor of the defendant. Judgment was entered pursuant thereto. This appeal is taken from such judgment. A trial *de novo* is demanded in this court pursuant to section 5630, Rev. Codes 1899.

The evidence in the case is voluminous, covering nearly 400 pages of the printed abstract. The facts pertinent to a determination of the issues may be summarized as follows: The plaintiff is the daughter of the defendant. In 1889 the plaintiff's husband, Alex. McConnell, died, leaving to her and to her daughter, Georgia McConnell, individually, considerable real and personal property. In 1891 the plaintiff married one George W. Forester, who engaged in business in Montana, and carried on such business with the plaintiff's money partly, and lost considerable of her money in that way. For the purpose of providing him with money, the plaintiff sold some of her property, and borrowed $2,000, and secured its payment by a mortgage on lot 13, in Valley City, on which lot there was a brick building, which is a part of the property in dispute in this action. This mortgage did not mature until about four years from August 21, 1893, the day on which the warranty deed was given by plaintiff to defendant. The plaintiff had signed notes jointly with her husband for goods purchased in his business, amounting to several hundred dollars, and some of these notes were about to become due in August, 1893. The plaintiff and her husband also owed the defendant $800 and two years' accrued interest at eight per cent per annum. The defendant had written Forester, asking him to pay this sum. He and his wife were then living in Montana. She came east to Valley City, where the defendant resided, to make some arrangement in regard to this indebtedness. At the making of the contract in relation to the disposition of the property herein involved, the plaintiff and defendant were the only persons present. As to what was said there in coming to the agreement, their testimony is

in conflict, and cannot be reconciled on the theory that both are endeavoring to tell the truth. The plaintiff testifies that there was no sale or agreement to sell; that the conveyance was executed to secure the defendant on her $800 note. She says: "My understanding, and we talked it, I was to give her a trust deed of the property. She was to look after it, and, after paying the mortgage, she to hold it long enough to collect the rent and pay the taxes, so she could pay the mortgage of $2,000 and her note of $800 and taxes, keep the property insured, and at the end of that time I was to have the property back." She further testifies that she did not know when she signed the deed that it did not express their agreement and her intention in regard to the disposition of the property, and that, had she known that it did not express their intention, agreement and understanding, she would not have signed it. The defendant denies that there was ever any talk, suggestion or intimation whatever as to deeding the property back, or that anything was said by them that contemplated anything but an absolute sale of the property, free of any conditions whatsoever. Her testimony as to the agreement is as follows: "A. On or about the 21st of August she (plaintiff) received a letter from Mr. Forester, asking her if she had fixed up the business of mine, and to be sure and do it at once. She told me how she said she was used. She didn't know that Mr. Forester was asking her to pay money at Livingston, and she had her interest to pay at Fargo. She said she had no money to pay that, and said that she was discouraged, but he wrote to her that she must fix that up, and she wondered how she would do it. We talked about it, and I told her I would be glad to help her if I could. But, finally, when she received the letter from Mr. Forester, saying she in the meantime had a letter from an attorney in Livingston, telling her she might as well pay the $600, because she would have to meet it later. * * * Then she received these letters in the morning, and in the afternoon, or at dinner time, or about that time, she says: 'Monie, I will sell you this property.' I said, 'Can you sell it?' She says, 'I can.' She says: 'Charlie is a good workman, and he can make a good living anywhere, but he will never settle down to work as long as I have a dollar. I will sell you this property. There is enough left of it to make you a good home. You have Georgia.' I said, 'What will the consideration be?' She says: 'It will pay your note, and you assume the mortgage and taxes.'" The defendant did not then and there accept the proposition to sell her

the property, but stated that she wished to think it over, and talk it over with Mr. Winterer, an attorney of Valley City. She started for his office, but met him on the street, and asked him to come to her house. He came there some time later, and the terms of the sale were stated to him by the plaintiff. The amount due on the $800 note was computed, and some other items of indebtedness due defendant from plaintiff were agreed on and settled, and the consideration for the deed agreed on as $1,100, in addition to assuming the payment of the $2,000 mortgage and payment of the 1892 taxes on all the property conveyed. At this interview all the details of the agreement were agreed upon, according to the testimony of Mr. Winterer and the defendant, and it was further agreed that the conveyance was to be a warranty deed. Mr. Winterer testifies that the agreement, as stated to him in their presence, was that the property was to be sold absolutely, and without any reservations. He procured from them the description of the property, and left for his office to draw the deed. He returned with the deed drawn, and was accompanied by his sister as a witness. He read or stated to the plaintiff the substance of the deed, and she stated that it was what she wanted, and perfectly satisfactory. She then signed it. It was witnessed and acknowledged in due form. He then took it to his office, placed his seal as notary public thereon, and returned to the house. There he delivered the deed to the plaintiff and she to the defendant. The defendant delivered the $800 note to plaintiff, who immediately destroyed it. The tenants were then notified of the sale, and that all rents were to be collected by the defendant. Mr. Winterer's testimony corroborates that of the defendant, although expressly denied in most particulars by the plaintiff. From this testimony and other circumstances shown in the record we are to determine what the intentions of the parties were at the time that this deed was executed. Was the transfer to be an absolute one, or was it to be a transfer subject to reconveyance after certain conditions had been performed?

Upon the oral testimony alone, we have no difficulty in reaching the conclusion that it was an absolute sale. There is a decided preponderance of evidence in favor of this conclusion. The circumstances surrounding the transfer are such as to corroborate this oral testimony, in our judgment. These circumstances will be referred to later. It is claimed by the plaintiff in her complaint and in her testimony that there was a mutual mistake made by the parties in

signing a warranty deed in place of a trust deed or mortgage security, as intended. This contention is utterly unsustained. The plaintiff claims that she supposed it was a trust deed. She does not attempt to show that the defendant thought it to be such. Her mistake alone would not be ground for reforming the deed. It must be a mutual mistake before the contract actually signed by the parties will be changed. 2 Pom. Eq. Juris. section 862; *Spare* v. *Home Ins. Co.* (C. C.) 19 Fed. 14; *Wachendorf* v. *Lancaster* (Iowa) 14 N. W. 316; *Bradford* v. *Remney*, 30 Beaver, 431; *Nevius* v. *Dunlap*, 33 N. Y. 676; *Ludington* v. *Ford*, 33 Mich. 123; *Paulison* v. *Van Iderstine*, 28 N. J. Eq. 306; *Diman* v. *Railroad Co.* 5 R. I. 130. "It must appear that both have done what neither intended." *Hearne* v. *Marine Ins. Co.*, 20 Wall. 488, 22 L. Ed. 395. The evidence does not warrant the conclusion that the deed was to be a mortgage, but, on the contrary, amply supports the finding that the deed was in exact compliance with the prior agreement. It is urged that the circumstances in evidence show that the deed was intended as a mortgage, and that its execution was made through mistake, and that such circumstances overcome the positive evidence of the defendant, and show satisfactorily that the deed was intended as a trust deed or mortgage. First it is claimed that the consideration was so grossly inadequate as to render it wholly improbable that an absolute conveyance could have been intended. The property consisted of four lots in Valley City. On three of them there were buildings, and one was a vacant lot. One of the buildings was a business block built of brick. The other buildings were for residence purposes. The evidence as to the value of this property in August, 1893, is very conflicting. Witnesses with apparently equal judgment and opportunities to speak of its value differ greatly in their conclusions. The highest valuation placed on the property was $7,000, and the lowest $3,825. This conveyance was made during the panic of 1893, and the witnesses testifying on behalf of the defendant place great stress upon the fact that the scarcity of money and the demand for it at that time caused a depreciation in values. The difficulty at that time of raising money necessarily affected the market value of property, and is a fact to be taken into consideration in determining what the fair value of the property then was. The consideration paid for this property by the defendant was, when all summed up, $3,300. This included the $800 note, the $2,000 note, other indebtedness on money paid out for plaintiff or loaned to her, and taxes for the year

1892. If the property were worth $3,825, a sale for $3,300 would not be at all inadequate in the sense that it would be evidence to indicate that a transaction was a mortgage and not a sale. But we may concede that the property was more valuable than that, and still the conveyance for the sum of $3,300, under the circumstances of this case, would not indicate to any degree that a trust or mortgage transaction was intended. The plaintiff and defendant were at that time on friendly terms. The defendant was the guardian of plaintiff's daughter, Georgia, who had lived with the defendant, and was to live with her in the future much of the time. The plaintiff was anxious to make some disposition of the property, and was anxious to pay or secure her mother the money due her. There were other debts due from the plaintiff, and it is quite clear from the evidence that some of her creditors were making inquiries as to the plaintiff's property with a view to realizing therefrom on some of those debts. The testimony shows that the plaintiff came from Montana to make some arrangement as to the Valley City property and the payment or securing of the $800 note. The plaintiff's husband was then doing a failing business, and had lost considerable money. He was in debt, and his wife was a joint maker with him on some of the notes given for these debts. The financial condition of plaintiff and her husband was becoming alarming and serious. It must have been forced upon the minds of plaintiff and her husband that the Valley City property was liable to be wrested from her by urgent creditors. With this state of facts confronting her, it was natural that she should prefer to sell the property to her mother, even at a sacrifice, and thereby pay her the $1,100 due her. Her daughter, Georgia, would thereby be directly benefitted, and her mother as well. It is quite reasonable, therefore, that the plaintiff should have stated, as testified by the defendant: "I will sell you this property. There is enough left of it to make you a good home. You will have Georgia." Her husband had lost much of her property, and it appeared that it would all soon be gone. Her desire to see her mother protected was, therefore, a most natural feeling. Our conclusion is, therefore, that under the circumstances, and in view of the relations of the parties, the consideration for the sale is not so inadequate as to give it any weight as a circumstance against the validity of the sale, or as showing that there was a mistake in the execution of the deed.

It is further claimed that there was no sale, and none intended by either party, and as tending to sustain such contention it is

urged that the $800 note was not turned over to the plaintiff when the deed was delivered, or at any other time. On this question the testimony of the defendant and of Mr. Winterer is positive and explicit that the note was turned over to the plaintiff, and by her torn up, when the deed was delivered. The plaintiff says it was not, but she is not corroborated by any other witness, nor by a single fact or circumstance. Her testimony on this point is, therefore, overthrown by so decisive a preponderance of the evidence that there remains no doubt in our minds that the note was returned to her.

On a careful consideration of the evidence we find no ground upon which to reform the deed as prayed for. The sole ground on which a reformation is asked is that there was a mutual mistake by the parties. No fraud is pleaded, and, had it been pleaded, the record lacks any evidence to support it. The contention is made in the argument that, "even though her (defendant's) mind was free from fraud at the time of the transaction, and though she still intended to carry out in good faith the conditions of the trust, at a later date, at least, she determined to retain the property." There would be some foundation for this contention if some admissions attributed to the defendant were made as claimed. The defendant denies making any of these alleged admissions. No independent circumstances tend to show that she ever made them. Such testimony consisted of admissions claimed to have been made years before this trial, and is not sufficient to establish the fact that the deed was mutually intended as security, simply, in the face of solemn recitals of the deed itself and the positive and convincing evidence of the two persons named, coupled with the positive denials of the defendant that she made them. It is further claimed that defendant, before selling one of the lots transferred by the deed in suit, advised with the plaintiff before making such sale. This is not established. The advice is claimed to have been sought at Billings, Mont., while defendant was visiting the plaintiff there. The defendant testifies that the transfer was made before she left Valley City to make the visit at Billings, and it is not shown in any way that there was any correspondence between them relating to the sale of the lot. The deed was made on September 28, 1894, and the defendant started for Billings on the 29th. The action has been considered and treated by us as one to reform a warranty deed, and make it conform to the alleged intentions of the parties that it should be a mortgage. The term "trust deed" is frequently used in the complaint and in the

evidence. The facts pleaded show, we think, that the trust deed mentioned was intended to be used as synonymous with the words "mortgage," "mortgage deed," or "mortgage security." This is shown conclusively by the clause of the complaint above quoted, wherein it is alleged that the deed was intended as a trust deed or mortgage security. Plaintiff's evidence also is to the same effect. She testifies that the agreement was that she was to give defendant a trust deed as security for the $800 note. Section 4703, Rev. Codes 1899, authorizes a transfer by deed to be shown to be a mortgage, and without such statutory authority courts of equity have such power. Parol evidence is admissible to show that a deed absolute on its face was intended as a mortgage. *Jasper* v. *Hazen,* 4 N. D. 1, 58 N. W. Rep. 454, 23 L. R. A. 58; Pomeroy Eq. Jur. section 1196.

Our conclusion is that the deed, as executed, expressed the real intention of the parties when executed. The most that can be said in favor of recovery by the plaintiff is that there is some evidence to sustain it. In the place of plaintiff having sustained her contention by that clear, convincing, and satisfactory evidence required in this class of cases, we find the defendant has disproved such contention by evidence that is clear and convincing, and leaves no substantial doubt in our minds of the truthfulness of the defendant's answer. Not only does the oral testimony thus convince our judgment, but the written evidence and other circumstances add to the weight of the oral testimony. On April 23, 1896, plaintiff's husband wrote the defendant asking her to loan him $50, saying in the letter that he would return it in a few days. On January 13, 1897, he again wrote her in regard to the loan of money. In neither of these letters was anything said about the property, nor the accumulated rental therefrom. The money was called for as a loan, and not as an advancement on account of these rents. If he was then relying on this deed as a mortgage simply, and considered that the defendant was holding it in trust for his wife, and he wished her to furnish the money, it would have been a most natural inquiry to make whether the rents had not now fully paid the debt due to the defendant. Instead of making such an inquiry, he asked for a loan, with express promises to return it soon. For nearly six years the defendant was permitted to manage this property, collect the rents, and make valuable improvements thereon, and never during that time did plaintiff or her husband demand an accounting, or show any interest in the outcome of the sale now claimed to have

been for temporary purposes only. There is nothing contained in the correspondence in evidence to indicate that the plaintiff or her husband ever entertained the idea of a reconveyance during these six years. So far as the correspondence is concerned, they seemed to have abandoned all interest in the property, as they never referred to it. The plaintiff does say that she asked for an accounting, but in her cross-examination on this subject her statements are so indefinite and contradictory as to entirely deprive them of any weight. In this the burden rests with the plaintiff to show by clear, convincing, and satisfactory proof that this deed was executed through a mistake existing as to its terms when it was executed. *Jasper* v. *Hazen, supra; McGuin* v. *Lee,* 10 N. D. 160, 86 N. W. Rep. 714. She has failed to do so. She has failed to show that there was a mistake on her part, even, much less to show that there was a mutual mistake. She does not claim any deception by reason of false statements as to the terms of the deed. The most she claims is that she supposed it to be a trust deed. She heard it read, or its contents stated, and could have read it herself. She is a woman of equal intelligence and business ability with her mother, so far as the record shows. No circumstances appear showing that she placed any particular confidence in her mother and was imposed on.

The fact is suggested in argument that the defendant committed a fraud on plaintiff in permitting her to sign the deed believing it to be a mortgage, when the defendant knew otherwise. There is not a scintilla of evidence to show this, and it fully appears that the facts known to the defendant were also made known to the plaintiff. After a careful examination of the evidence, we find that the contract made by the parties, as evidenced by the deed, should not be reformed. The deed expressed their intentions. By reforming it to comply with plaintiff's request, we would be making a contract for the parties not contemplated by them when the deed was signed, and this should never be done. Our conclusion accords with that of the trial court.

The judgment is affirmed. All concur.