Monroe, Respondent, vs. State Bank of Patch Grove, Appellant.

*May 1—June 5, 1923.*

*Bills and notes: Indorsement: Parol evidence to explain: Indorsement of agent to principal: Holder in due course: Indorsee with knowledge of defenses available against indorser.*

1. One W. M. signed S.'s notes to a bank as surety. He later had the bank procure a new note and a mortgage from S. for the old notes and interest thereon, which were indorsed and assigned to him by the bank after he paid the original notes of S. In an action against the bank on the new note by L. M., to whom W. M. sold it, parol evidence was admissible to show that in obtaining the note and indorsing it to W. M. the bank was acting as his agent and was not liable as an indorser, the indorsee, L. M., being a purchaser after maturity.

2. An indorser may show as against his indorsee that the indorsement was for collection, or an agent may show that in transferring title to his principal by the indorsement of negotiable paper he did not intend to incur personal liability. He may also show that the indorsement was in trust for a special purpose, or that it was obtained by fraudulent representations which were relied on by him, and which, if liability were enforced, would operate as a fraud on him.

3. Under the facts, W. M. was the equitable owner of the note when it was indorsed to him by the bank; and the fact that the indorsement was not limited by the words "without recourse" did not make the bank liable as an indorser in an action on the note by the indorsee, L. M., the indorsement being without consideration.

4. The evidence is *held* to show that L. M., when he took the note by indorsement from W. M., knew the facts which constituted a defense as between the bank and W. M., and having, therefore, no better right than his assignor, he cannot recover.

APPEAL from a judgment of the circuit court for Grant county: S. E. SMALLEY, Circuit Judge. *Reversed.*

Action by the indorsee against the payee of a promissory note indorsed after maturity. The indorsee of the bank was made a party defendant upon motion of the bank. The complaint alleged:

"That heretofore one Ben Sumner made his promissory note in writing dated on the 1st day of April, 1919, and thereby promised to pay to the order of *State Bank,* Patch Grove, Wisconsin, $1,524.75 on April 1, 1920, with interest at the rate of seven per cent. per annum from date until paid, with costs of collection.

"That the defendant thereafter indorsed the same in blank and delivered it so indorsed, and thereafter said note came lawfully to the possession of the plaintiff, who is now the owner and holder thereof for value."

The bank admitted the making of the note as alleged, and alleged as a defense that on the 21st and the 28th days of March, 1918, the bank, at the request of defendant Wirt Monroe, loaned to Sumner $1,200 and $225, and that Wirt Monroe signed each note as surety; that Sumner shortly thereafter moved to Minnesota; that in February, 1919, the bank notified Monroe that it would look to him for payment of the notes; that at the request of defendant Monroe the bank on April 1, 1919, secured from Sumner a new note for $1,524.75, the amount of the two old notes with interest, and also secured a second mortgage on Minnesota land owned by Sumner; that this note and mortgage were secured for the benefit of Monroe in case he had to pay the notes which he had indorsed as surety; that on April 29, 1920, after failure of Sumner to pay the note, it was paid by defendant Monroe; that thereupon the old notes were

surrendered to Monroe, the new note indorsed to him, and the mortgage assigned to him.

As to the indorsement of the note the bank alleged that:

"If the plaintiff is the owner and holder of said note he is not the holder thereof in due course, and that he received the same after it became due and with full knowledge of all the facts and equities between this answering defendant and the defendant Wirt Monroe."

In the spring of 1921 defendant Wirt Monroe indorsed the note without recourse to the plaintiff, *Lyle Monroe*. Plaintiff testified that he received the note for his equity in certain real estate. The real estate consisted of a farm of 159 acres which was incumbered with two mortgages amounting to $6,560. Plaintiff testified that he had paid $45 an acre for the land. Other witnesses gave conflicting estimates as to its value, some placing it at $60 an acre, others at $40. Wirt Monroe testified:

"There was $6,560 upon it at that time. . . . In my opinion the reasonable value of the land at the time of the trade was right around the amount that was against it."

As to the making of the note and mortgage of April 1, 1919, Wirt Monroe testified:

"I had an agreement with the bank that the bank was to get this note and mortgage from Ben Sumner and then convey it to me in order to protect me upon those notes signed by me and Ben Sumner so that I would have some recourse. The assignment by the bank to me was in carrying out that agreement."

In a letter dated December 11, 1919, defendant Monroe told the bank that he was going to pay part of the indebtedness in January and the balance in March. He stated:

"I wish you would write Sumner and ask him if he can't or won't make a partial payment of the principal as well as the interest. P. S. Don't tell him you are looking to me for your pay."

The court held that the plaintiff was not a holder in due course of the note sued upon. The jury found that the bank did not obtain the note from Ben Sumner as agent of Wirt Monroe; that the indorsement by the bank to Wirt Monroe was not made without consideration; that it was not agreed between the bank and Wirt Monroe that in indorsing the note the bank would not assume any liability thereon.

Judgment was ordered in favor of plaintiff against defendant *State Bank* in the sum of $1,899.05 and costs of collection. The complaint was dismissed as to Wirt Monroe.

For the appellant there was a brief by *Graves & Earll* of Prairie du Chien, and oral argument by *W. R. Graves.*

For the respondent there was a brief by *Kopp & Brunckhorst* of Platteville, and oral argument by *L. A. Brunckhorst.*

JONES, J.   There are many facts in this case as to which there is no conflict in the evidence. The bank was unwilling to lend the money to Sumner without security, and in order to obtain the loan for Sumner Wirt Monroe signed as surety. It was conceded that during the whole period he was financially responsible.

After Sumner removed to Minnesota the bank naturally looked to Wirt Monroe for payment and so notified him. Monroe recognized the liability, and in order that he might have some security requested the bank to obtain a new note and a mortgage from Sumner. The testimony shows that he believed the bank would be more likely to succeed in negotiations with Sumner than he would. The testimony that the bank obtained the note and mortgage from Sumner for the accommodation of Wirt Monroe and as his agent is wholly undisputed, and the verdict of the jury to the contrary has no foundation whatever.

This note and mortgage and the original notes, as well as some Liberty bonds deposited by Wirt Monroe as security, were retained by the bank until Wirt Monroe paid in full the

original notes with interest. This payment was not made until after the note and mortgage received from Minnesota had become due. On payment of the first two notes the bank surrendered them to Wirt Monroe together with the bonds, and indorsed the last note to the order of Wirt Monroe and assigned the mortgage to him.

Counsel for plaintiff contend that all testimony tending to prove the agency of the bank should have been excluded, and invoke the familiar rule that the name of the indorser signed upon the back of a negotiable instrument conveys his meaning and intention as fully as if he had written out the obligation of the contract of indorsement in detail, and that the contract cannot be varied by parol. But as between indorser and indorsee there are certain limitations or exceptions to this rule. It has been frequently held that where there have been antecedent relations between the indorser and indorsee out of which equities have arisen, the indorser may prove these relations and the real nature of the transaction involved in the indorsement. Thus it has been held that the indorser may show as against his indorsee that the indorsement of a note was merely for collection (*Johnson v. Schnabaum*, 86 Ark. 82, 109 S. W. 1163, 17 L. R. A. N. s. 838; *Allin v. Williams*, 97 Cal. 403, 32 Pac. 441; *Stack v. Beach*, 74 Ind. 571; *Lovejoy v. Citizens' Bank*, 23 Kan. 331; *Howell v. McCarty*, 77 W. Va. 695, 88 S. E. 181; *Morris-Miller Co. v. Von Pressentin*, 63 Wash. 74, 114 Pac. 912; *Dale v. Gear*, 38 Conn. 15, 9 Am. Rep. 353; 1 Daniel, Neg. Inst. (6th ed.) § 720a); and that an agent, in transferring title to his principal by indorsement of negotiable paper, did not intend to incur personal liability (*Farmers Sav. Bank v. Hansmann*, 114 Iowa, 49, 86 N. W. 31; *Texas Baptist Univ. v. Patton* (Tex.) 145 S. W. 1063; *Allin v. Williams*, 97 Cal. 403, 32 Pac. 441); and that an indorsement by a principal to his agent was for a special purpose (*B. F. Avery & Sons v. Miller*, 86 Ala. 495, 6 South. 38; *First Nat. Bank v. Nat. Marine Bank*, 20 Minn. 63; *Dale v. Gear*, 38 Conn. 15, 9 Am. Rep. 353; 1 Daniel, Neg. Inst. (6th ed.) § 720a.

It is said in 3 Ruling Case Law, 1157:

"But where the contest is between the immediate parties to the contract of indorsement, the modern tendency seems to be to permit the introduction of parol evidence to prove a different agreement from that imported by the blank indorsement.    In other words, the presumption of law arising from the indorsement in blank is not deemed conclusive."

"Where the rights of third persons are not affected, and the opponent is not a holder having paid value, ignorant of the circumstances attending the transfer, the courts as a general rule have permitted the introduction of parol evidence to show that at the time of transfer the transferrer stipulated against the liability imported by the blank indorsement of the instrument."

In most of the cases above cited the indorsement was in blank, in others it was to order.    There is undoubtedly much conflict in the authorities relating to the question whether an indorser may impeach his indorsement when sued by the indorsee, but we think that by the weight of authority, as stated by Mr. Daniel, "It may be shown that the indorsement was without consideration, as for instance that it was for the indorsee's accommodation, or merely to transfer the legal title to the indorsee, he being in fact the owner of the paper; or that it was indorsed for collection, where the form of indorsement does not show that fact, or that it was indorsed merely to perfect an arrangement between the maker and indorsee" (1 Daniel, Neg. Inst. (6th ed.) § 720a), and that it may be shown that the indorsement was in trust for a special purpose, as illustrated by many of the cases above cited; or that the indorsement was obtained by fraudulent representations which were relied on by the indorser and which, if liability were enforced, would operate as a fraud on him.    *Ibid.* § 722; Norton, Bills & Notes (4th ed.) p. 159.    A valuable note on the subject showing the conflict in the authorities will be found in 4 A. L. R. 764.

In the present case the proof, both oral and written, shows beyond doubt that when the indorsement was made the

bank was holding the note and mortgage as the agent or trustee of Wirt Monroe and solely for his benefit, since the bank at any time after maturity could have enforced the original notes against Wirt Monroe, who was responsible and who had no defense.

At the time of the indorsement the transaction between him and the bank had been fully settled. Although the note and mortgage were made payable to the bank, Wirt Monroe was the equitable owner and entitled to the delivery of the documents which had been procured for him at his request. The fact that by some inadvertence the words "without recourse" were omitted from the indorsement does not change the real nature of the transaction by which the legal title was transferred to him. There was no consideration for the indorsement, and if he had brought suit upon it against the bank it would have been an unconscionable claim.

We are now confronted by the question whether plaintiff *Lyle Monroe,* as a subsequent indorsee, is entitled to recover. The court properly held that, since the note in question was overdue when the plaintiff received it, he was not a holder in due course. In the briefs there is much able discussion and many authorities are cited as to the effect of the indorsement of overdue negotiable paper.

It is argued by counsel for plaintiff that indorsement after maturity does not change the character of the original contract as to the negotiability or effect; that when an instrument is negotiable in its origin it continues to be negotiable until it has been restrictively indorsed or discharged by payment or otherwise; that the indorsing of a note to order after due is the making of a new note and the indorser is liable.

It is further argued that the only effect of a transfer after maturity is to subject the indorsee to all defenses existing between the original parties, and between himself and his immediate indorser to the paper at the time of the transfer.

If we were satisfied that the plaintiff took the note without notice of the equities between the bank and his indorser and paid value for it, there would be presented another interesting question of law on which there is much conflict in the authorities.

In one line of decisions it is held that an indorsee of overdue paper takes it subject to all defenses which might have been raised against his immediate assignor and against any prior holder. In others it is held as claimed by plaintiff's counsel, that the indorsee takes it subject only to such defenses as attach to the note or bill itself, and not to claims arising out of collateral matters or independent transactions, whether they arise against the payee or an intermediate holder. The authorities on this subject are collected and discussed in an elaborate note in 46 L. R. A. 753.

In view of the conclusion we have reached on another branch of the case a decision on this subject becomes unnecessary. Concerning his transfer of the note to plaintiff Wirt Monroe testified:

"I told him that I signed the note with Ben Sumner to the *Patch Grove State Bank* and he did not pay it, and that the bank obtained a note and mortgage from Ben Sumner and assigned it to me. I certainly told him the facts in regard to this as they really were. I explained to him in detail how I got the note and mortgage."

This testimony was not denied by plaintiff. He testified that he knew that Wirt Monroe had signed two notes and that he had told the bank that he would pay the notes when he got the mortgage and the note in suit. He testified further:

"He said he told them that if they would get a second mortgage and note upon that land up there he would straighten up with them on these notes that he had signed with Ben Sumner."

Before taking the note plaintiff went to another bank for advice and also to an attorney, but it does not appear that

he told them that the note was overdue.    He made no inquiry of any officer of the defendant.

The fact that plaintiff took the note when it was dishonored made it manifest that he was not taking it in the ordinary course of business; and since the facts were then actually brought to his knowledge as to the details of the transaction between the bank and his indorser, he had no better right than his assignor.    On this subject there is no conflict in the authorities, and any other rule would be obviously unjust.

Since we hold that on the facts proven plaintiff had actual knowledge of the facts constituting a defense as between the bank and Wirt Monroe, it is unnecessary to discuss the question on whom rested the burden of proof and the further question whether plaintiff paid value for the note, although on this latter point the evidence for the plaintiff is far from convincing.    It is our conclusion that the motion to dismiss the complaint should have been granted.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the plaintiff's complaint.