**L. W. WENTZEL IMPLEMENT CO.**

**v.**

**STATE FINANCE CO.**

No. 7428.

Supreme Court of North Dakota.

March 1, 1954.

526

"For value received I hereby sell and assign this promissory note and attached chattel mortgage to the State Finance company, Grand Forks, N. Dak. This note being secured by the attached chattel mortgage which in turn is sold and assigned to the State Finance Company."

In November 1949 Nygren had purchased an automobile from the plaintiff, the purchase of which had been financed by the Commercial Credit Corporation. That obligation was guaranteed by the plaintiff. Nygren defaulted in his payments on the automobile and the plaintiff ultimately made good on its guarantee to the Commercial Credit Corporation.

In the meantime the plaintiff discovered that the defendant held Hoppe's $1700 note as collateral security to Nygren's $300 loan. The plaintiff then sent its bookkeeper, Mr. Nelson, to the defendant's office to pay the amount due on Nygren's loan, which was $286.82. Nelson gave the defendant's manager a check for that amount and procured the note, upon which was placed the following endorsement:

"February 3, 1950.

"For value received we hereby sell and assign this promissory note and chattel mortgage to the L. W. Wentzel Implement Co., Crookston, Minn. This note being secured by the attached chattel mortgage which in turn is sold and assigned to the L. W. Wentzel Implement Co.

"Signed
"State Finance Co.
"O. K. Fossum
"Mgr."

Day, Stokes, Vaaler & Gillig, Grand Forks, for plaintiff and appellant.

Lyche & Lyche, Grand Forks, for defendant and respondent.

MORRIS, Chief Justice.

This is an action to recover on a promissory note from an endorser thereof. The note, dated December 19, 1949, was executed by one Vernon S. Hoppe in favor of Elmer T. Nygren in the sum of $1700 and bearing interest at six per cent. It was due October 1, 1950. On December 27, 1949, Nygren borrowed $300 from the defendant and as collateral security for this loan turned over to the defendant the Hoppe note, on the back of which he placed the following signed endorsement:

Nygren defaulted on the payments on the automobile. Hoppe never paid his note and filed a petition in bankruptcy. The plaintiff seeks to recover the face of the Hoppe note with interest from the defendant and alleges that it was delivered to the plaintiff for value prior to maturity and that the maker has been discharged in bankruptcy proceedings. The defendant in its original answer under which the case was tried de-

nies that it endorsed the note to the plaintiff and alleges that on or about February 3, 1950, by virtue of an arrangement with Nygren the plaintiff paid off the balance owing on Nygren's loan from the defendant and thereupon undertook to release its interest in the note and mortgage and to assign that interest to the plaintiff but did not intend to endorse the note or guarantee payment thereof, as the plaintiff well understood, and that if the language employed purports to be an endorsement or guarantee it is the result of mutual mistake of the parties, and that the defendant is entitled to have the note reformed so as to correct and overcome the mutual mistake. The defendant also alleges there was no consideration passing from the plaintiff to the defendant for the endorsement. The defendant amended his answer setting up further defenses of material alteration and failure of the plaintiff to present the note for payment as required by Chapter 41–07, NDRC 1943.

Over objection of the plaintiff the defendant was permitted to file a second amended answer and counterclaim. In the counterclaim the defendant alleges that:

"the parties intended to assign the note in question from the defendant to the plaintiff, it being specifically understood that the defendant should have no further liability, and it was intended that the assignment should be merely for the purpose of transferring title to the plaintiff that the writing was made upon the note by the defendant, and such writing was in no manner intended to create any liability on the part of the defendant; that through mutual mistake both parties believed the language used to constitute an assignment rather than an endorsement, and neither party at the time of the transaction understood the language used to be an endorsement; that through their mutual mistake both parties believed the language used, to-wit: 'sell and assign' to constitute an assignment rather than an endorsement; that if there is any endorsement of said note by the defendant, the same was made through mutual mistake of the parties, both believing the same to be an assignment rather than an endorsement."

The defendant then adds to its prayer for relief a demand

"For a reformation of said note to correct any mutual mistake and eliminate any fraud."

The trial court held against the defendant on the issues of material alteration and failure to present the note for payment. His rulings with respect thereto are clearly correct and no questions regarding them are presented on this appeal. The question as to the proper pleading to be considered by this court on trial de novo presents no serious problem here. The plaintiff argues that the allowance of the last amendment by the trial court was error. But as we view the case the last amended answer introduced no new issues and merely added a prayer for relief through reformation. The facts upon which this prayer was based had been pleaded in the former answers.

The original answer, while containing no specific prayer for reformation, did allege:

"That if any of the language employed purports by any construction to be an endorsement or guarantee, it is the result of mutual mistake of the parties."

And it is further alleged:

"That the defendant is entitled to have the instrument reformed so as to correct and overcome the mutual mistake and to eliminate the fraudulent additions."

These allegations were incorporated in the amended answers.

■ The action instituted by the plaintiff being for the recovery of money only upon the liability of endorser upon a promissory note was legal in its nature. Relief by way of reformation of an instrument is equitable but that does not mean that equitable relief cannot be granted in a legal action or that equitable defenses may not be interposed. In this state the distinction as to form be-

tween actions at law and suits in equity has been abolished. Section 32–0109, NDRC 1943 provides that there shall be but one form of action for the enforcement or protection of private rights and the redress of private wrongs. Section 28–0741 NDRC 1943 requires that in the construction of a pleading for the purpose of determining its effect its allegations shall be liberally construed with a view to rendering substantial justice between the parties.

In French v. State Farmers' Mutual Hail Ins. Co., 29 N.D. 426, 151 N.W. 7, 9, L.R.A.1915D, 766, this court held that an insurance contract may be reformed and a recovery had thereon in the same action. It was also held:

"Under the provisions of section 7482, Comp.Laws 1913 (Section 28–0737 NDRC 1943), the court has the right, in a proper case, to grant an amendment of the pleadings even after judgment. The propriety of the granting of such amendments rests within the sound discretion of the trial court and will not be reviewed by this court, except in a case where such discretion has been abused."

This court went on to state:

"As we view the matter, however, the principle of estoppel should not be applied in a case where there is a misdescription of the property intended to be covered by the policy, but it is rather a case coming within the rule that parol evidence may be admitted for the purpose of showing that, by reason of a mistake, a written instrument does not truly express the intention of the parties. While there are cases holding that such evidence is only admissible in a court of equity, 'yet this rule is by no means universal, and, in fact, the weight of authority supports the doctrine that evidence of this character is also admissible in an action at law.'" See also Pipan v. Aetna Ins. Co., 55 N. D. 585, 214 N.W. 901; Fotheringham v. Lockhart, 30 S.D. 394, 138 N.W. 804.

In his order for amendment the trial court clearly sets forth his reasons for allowing it, as follows:

"The defendant, on April 24, 1953, upon notice duly served, moved the Court for permission to amend its Answer a second time, designated as Second Amended Answer and Cross-Complaint. The only purpose of it appears to be to designate the defense of mutual mistake set out in the original Answer and the first Amended Answer, upon which, in both cases defendant asked for reformation, as a Cross-Complaint, it appearing largely a matter of form rather than of substance, although it adds two additional paragraphs, one of which is simply a reallegation of the earlier paragraphs, and one merely an amplification of facts relating to the intention of the parties, and the alleged so-called mutual mistake. While the grounds for reformation should properly be in the form of a Cross-Complaint, the case was tried upon all the issues raised by the Answer. No Demurrer was interposed to such provisions, nor did the defendant object that no Reply had been served. The case, nevertheless, was tried as if the same had been denied formally by a Reply and all the allegations thereof were in issue. Perhaps there is no particular need for an Amendment, but no new issue is actually raised by such Amended Answer and its general form is better. It does conform to the facts attempted to be proved and does not change the claim or defense substantially.".

We agree with the trial court in this statement and it is clear to us that he did not abuse his discretion in allowing the amendment.

Over the objection that oral testimony could not be introduced to vary the terms of a written instrument, Mr. Fossum, manager of the State Finance Company, was permitted to give the following testimony, in substance: Mr. Nygren made an application for a loan of $300 and as security offered

the Hoppe note. This note was accepted by the defendant as collateral security for the loan. Some time later Fossum received a phone call from the Wentzel Implement Company wherein a representative of the company inquired whether Fossum was holding the $1700 Hoppe note as collateral and advised that plaintiff wanted to pay off the amount due from Nygren and requested that Fossum "assign this seventeen hundred dollar note to them as collateral that I was holding." The next step appears to be that Fossum asked Nygren whether it was agreeable to him if the plaintiff paid off his account and Fossum would turn over the note he was holding as collateral to the Wentzel Implement Company and Nygren replied: yes. This was either the same day or the day after Fossum had received the call from the plaintiff company. The third step in the transaction, according to Fossum, occurred when a Mr. Nelson, who was the bookkeeper and an officer of the plaintiff, called at Fossum's office and informed him that he was from the Wentzel Implement Company and that he was there to pay off the Elmer Nygren account. Nelson gave Fossum a check on behalf of the plaintiff company payable to the State Finance Company in the sum of $286.82, which was the balance of the Nygren account, "and requested that I assign the note in question to the Wentzel Implement Company." Nygren's note for $300, representing his debt to the State Finance Company, was then cancelled and turned over to him. The transaction between Nelson and Fossum took place on February 3, 1950. Fossum heard nothing further about the matter until over two and one-half years later when plaintiff's attorney phoned him to the effect that he had the $1700 note for collection. Fossum then states: "Well, in our conversation I found out that I had neglected to put in the words 'Without recourse' in the assignment." Fossum then went to the office of L. W. Wentzel, president of the plaintiff company, who advised Fossum that the matter had been turned over to the plaintiff's attorney and Fossum says: "He admitted to me that it was an assignment, that he knew that he was—that he was taking over this note to be used as collateral

for this deal he had with Nygren", and that Wentzel stated he would have taken over the note whether the words "Without recourse" had been in the assignment. Fossum further stated that he had typed and signed the endorsement or assignment on the back of the note.

L. W. Wentzel, the president of the Wentzel Implement Company, was called for cross-examination under the statute and over the objection that the testimony tended to vary the terms of a written contract, testified, in substance, as follows: Nygren was dealing with the plaintiff for an automobile and called at Wentzel's office approximately in the first part of February 1950.

"Q. (By Mr. Lyche) The agreement at this time was made between you and Nygren to obtain this note from the State Finance Company, is that right? A. Yes.

"Q. I suppose he told you he owed some money to State Finance Company? A. Yes.

"Q. And that the Finance Company would have to be paid off first before the Hoppe note could be released or something to that effect? A. Yes.

"Q. And then did you agree to advance him the money to pay off the State Finance Company? A. No.

"Q. Did you put up the money that paid off the State Finance Company? A. We paid the Finance Company directly,—State Finance Company— through my bookkeeper."

"Q. How did that automobile enter into the transaction? A. He brought over some money I believe in November of 1949 and he was in default of payment so we purchased this note from the State Finance Company in February.

"Q. And what relation did that have to the car and Nygren? Was that extra security on his obligation on the car? A. No, it really wasn't. We bought the

note there so that we would have it in our possession.

"Q. So you would have it in your possession in case he didn't pay for the car, was that it? A. You might say so, yes."

Still later in his testimony Wentzel says:

"And I forget just how we did find out he had the note, sold a note to the State Finance Company at Grand Forks, but we did find out and we sent my bookkeeper over to purchase the note at that time."

Mr. Wentzel did not testify on direct examination and did not deny the statements attributed to him by Fossum. The only two witnesses in the case are Fossum and Wentzel.

The trial court found that the defendant did not own the Hoppe note and had no legal right to sell it. He further found that neither of the parties intended that the defendant should either guarantee the Hoppe note as an endorser or sell it but understood that it was to be released to Nygren and assigned to the plaintiff by him and as a shortcut it was assigned direct to the plaintiff; that the plaintiff did not ask the defendant to pay the note until a year and a half or more after it had become due and that the defendant was not advised of the nonpayment of the note at the time the plaintiff received notice of the filing of a petition in bankruptcy by the maker some three months before this action was instituted. The court also found that the parties intended only that the defendant should assign the note to the plaintiff and that the language used in the endorsement was understood by both parties at the time to be an assignment and it was intended by them to be such and that the parties used this language through mutual mistake and that the defendant is entitled to have the instrument reformed so as to cure the mistake and make it reflect the actual intent and understanding of the parties by adding and inserting therein the words "Without recourse" immediately following the words "for value received."

■ We agree with the trial court that if the endorsement be not considered an assignment but an unqualified endorsement carrying with it the liability of a general endorser, it does not express the intent of the parties and that as so construed the language was adopted through a mutual mistake. The plaintiff initiated the negotiations culminating in the transfer of the $1700 note. The transaction was largely for the plaintiff's benefit. When its president learned that the defendant held a note payable to Nygren in the sum of $1700 as collateral security for Nygren's $300 debt to the defendant, he undertook negotiations to obtain that note as security for the debt that Nygren owed on the automobile and which the plaintiff had guaranteed. The transfer was arranged with the consent of Nygren and it was agreed that the plaintiff would pay the debt due the defendant and secure a transfer of the collateral note to the plaintiff. The inherent nature of the transaction tends to support the defendant's contention that the endorsement which on its face purports to be an assignment was that and nothing more and negatives the plaintiff's contention that in order to collect $286.82 owed by Nygren the defendant sold the collateral note to the plaintiff for that amount and assumed the liability of an endorser to the full extent of $1700 and interest. It is significant that any assertion of liability against the defendant was long delayed. It is a fair assumption under the circumstances here presented that the possible liability of the defendant for the full amount of the collateral note did not occur to either Mr. Fossum, Mr. Nelson, or Mr. Wentzel until the latter turned over the note for collection.

■ The plaintiff stands squarely upon the proposition that it seeks to recover upon a written contract and that the contract cannot be contradicted or varied by parol evidence and that all of the evidence of the defendant relative to the transaction which culminated in the endorsement was inadmissible. Counsel for plaintiff cites Routier v. Williams, 52 N.D. 793, 204 N.W. 678, wherein this court held in the syllabus:

"2. A regular blank indorsement of a negotiable promissory note is an express contract in writing, by the terms of which the indorser agrees to pay the note to the holder thereof if the maker fails to do so, provided the note at maturity is duly presented to the maker, and due notice of nonpayment is given to the indorser.

"3. The contract evidenced by a regular blank indorsement of a negotiable note is subject to the general rule that the terms of a written contract may not be varied or contradicted by parol evidence."

The note on its face contains the following provision:

"The makers, endorsers and guarantors severally * * * waive demand, protest, and notice of protest and notice of dishonor."

The rule stated in Routier v. Williams, supra, is supported by the great weight of authority. Brannan's Negotiable Instruments Law, 6th Ed., Section 66; 8 Am. Jur., Bills and Notes, Section 1096; Annotations 4 A.L.R. 803; 11 A.L.R. 637; 22 A.L.R. 527, 35 A.L.R. 1120, 54 A.L.R. 999, 92 A.L.R. 726; Bank of Conway v. Stary, 51 N.D. 399, 200 N.W. 505, 37 A.L.R. 1186. To the general rule thus stated there are exceptions, especially as between the endorser and the endorsee. As one of these exceptions we find that parol evidence is admissible as between an endorser and an endorsee of a promissory note to show that the endorsement was merely to transfer legal title to the endorsee. Dickinson v. Burke, 8 N.D. 118, 77 N.W. 279; Sawyer State Bank v. Sutherland, 36 N.D. 493, 162 N.W. 696; Monroe v. State Bank, 181 Wis. 19, 193 N.W. 991, 35 A.L.R. 1115. The defendant urges that this exception is applicable to the facts of this case. The exception seems to apply where the transfer was without consideration. In this case the transfer was primarily for the accommodation and benefit of the plaintiff but the defendant did receive payment of the balance due it on the Nygren debt and to that extent was benefited by the transaction.

It appears to us that the only theory upon which the parol evidence was admissible was that under the allegations of the defendant's answer the endorsement, because of a mistake in its terms, did not set forth the true intention and agreement of the parties and that the defendant was entitled to have it reformed so as to express that agreement. On this question Susquehanna S. S. Co. v. A. O. Andersen & Co., 239 N. Y. 285, 146 N.E. 381, 383, is in point. Judge Cardozo, speaking for the Court of Appeals of New York, says:

"On the trial the defendant attempted to prove the conversations preceding and accompanying the signing of the contract. The trial judge excluded the evidence upon the ground that antecedent conversations were merged in the writings. Defendant's counsel then reminded the court that there was 'a claim here for reformation,' and that the evidence was 'admissible under that defense if under no other.' The ruling was not changed. Some point having been made that there should have been 'a counterclaim in equity,' defendant's counsel asked that, if there was any objection to the form of the plea of reformation, the plaintiff be directed to state it to the end that the defendant might have an opportunity to amend. The direction was not given.

"We think the defendant's answer may fairly be construed as setting forth a counterclaim in addition to a defense, if a counterclaim be necessary. The statement that 'the defendant is entitled to have the said letter corrected so that it will express the true agreement' is equivalent to a demand that it be corrected by the court accordingly. True, the description of a counterclaim as a defense has been held to dispense with the need of a reply, since otherwise a pleader by his own misdescription might set a trap for his adversary. Acer v. Hotchkiss, 97 N.Y. 395, 408, 409; Equitable Life Assurance Society of the United States v. Cuyler, 75 N.Y. 511; Bates v. Rosekrans, 37 N.Y. 409, 412. To obviate such dangers the

plaintiff must have the benefit of any denials or defenses that a reply could have stated. When that is done and the stage of trial is reached without previous motion challenging the pleading, an answer may be read in accordance with its substance rather than the label of its headings. Acer v. Hotchkiss, supra; National Gum & Mica Co. v. MacCormack, 124 App.Div. 569, 109 N.Y.S. 286.

"In the determination of the case before us we rest our judgment upon a broader ground, since there is room for the contention that the defendant stood upon the defense and made no point that its answer was to be read as something else. The question is fairly here whether the facts establishing the need for reformation, even if not stated as a counterclaim, make out an equitable defense. The plaintiff produces a writing which in form is a contract, and asks the judgment of the court that it be enforced according to its terms. The defendant answers that enforcement is inequitable because fraud or mutual mistake has brought about the result that the writing is not a true expression of the meaning of the parties. This is good as a bar, and does not cease to be good because the defendant, if it had so chosen, might have asked for something more. There is no dearth of subtle discussion as to the effect of mistake in advance of reformation. Cook, Equitable Defenses, 32 Yale Law Jorunal, 645; Pomeroy, Remedies and Remedial Rights, § 87 et seq.; Hinton, Equitable Defenses under Modern Codes, 18 Mich.L.R. 717. Much of it is an echo of precedents and distinctions formulated in an era when there was no such thing as an equitable defense in a trial at common law. Now, 'a defendant may set forth in his answer as many defenses and counterclaims, or both, as he has, whether they are such as were formerly denominated legal or equitable.' Civ.Prac.Act, § 262; Code Civ.Pro. § 507; Code of Procedure, § 150."

The section of the New York Code quoted by Judge Cardozo finds a counterpart in our Section 28-0715, NDRC 1943 which provides:

"The defendant may set forth by answer as many defenses and counterclaims as he may have, whether legal, equitable, or both. Each defense must be stated separately and must refer to the causes of action which it is intended to answer in such manner that it may be intelligibly distinguished."

The endorsement in this case was in the form of an assignment to which the law, according to the majority rule, gives the effect of an unqualified endorsement. Brannan's Negotiable Instruments Law, 7th Ed., Section 31, page 601, Section 34, page 606, Section 38, page 624; 8 Am.Jur., Bills and Notes, Section 546. But the defendant set up in its answer that the language used was the result of a mutual mistake and did not express the intent of the parties which was that the defendant only "assigned" and did not guarantee payment in any form of the note and that the defendant is entitled to have the endorsement reformed to correct the mistake.

■ When the issue is whether or not a written instrument should be reformed because of a mutual mistake, parol evidence is admissible to show how the instrument should be corrected in order to conform to the agreement or intention of the parties. Forester v. Van Auken, 12 N.D. 175, 96 N. W. 301; 45 Am.Jur., Reformation of Instruments, 113; 76 C.J.S., Reformation of Instruments, § 83b.

The trial court did not err in admitting parol evidence for the purpose of showing that the endorsement did not express the true agreement and intention of the parties and that it was not intended that the defendant should accept the liability of a general endorser. Neither did he err in determining that the defendant is entitled to have the endorsement reformed so as to express the true agreement and intention of the parties. The judgment appealed from is affirmed.

BURKE, SATHRE and GRIMSON, JJ., concur.