SAWYER STATE BANK, a Corporation, v. M. R. SUTHERLAND and E. A. Price.

(162 N. W. 696.)

**Negotiable instruments — promissory notes — indorsement — consideration — account — purchaser of — debtor — note given by — to cover account — to original holder of account — note the property of purchaser of account — real owner — indorsement of — by original owner of account — mere naked title transferred — is without consideration — no liability against indorser.**

1. Where one, the owner of an open account, sells and disposes of the same

---

Note.—On liability of maker, acceptor, or indorser of commercial paper where blanks therein are filled contrary to instructions, see note in 5 B. R. C. 702.

On admissibility of parol evidence, as between indorser and indorsee, that unre-

to another, and the person to whom such account is sold procures the execution of a promissory note by the person who owes the account, in the name of the person to whom such account was originally owing, instead of procuring the execution of such note in the name of the real owner after the purchase of such account, the person who purchased such account is the actual owner of such note, though the note is payable to the person from whom he purchased such account, and the indorsement of such promissory note by the original owner of such account, in whose name such promissory note is taken, merely transfers the naked legal title of such note to the real owner, and such indorsement is without consideration and creates no liability against the indorser.

**Negotiable instruments — promissory note — indorsement — presentation — notice — indorsement of itself creates no liability.**

2. The indorsement of a promissory note creates no obligation of itself, and the indorser is not liable until presentment to the maker and notice to the indorser of such presentment.

**Negotiable instruments — promissory note — indorsement in blank — material alteration — without consent of indorser — "protest waived" — words added — liability increased — operation of — indorser discharged.**

3. Where a promissory note is indorsed in blank, and without the consent of the indorser other and additional words are written above his blank indorsement, such as the words "protest waived," which operate to increase the liability of the indorser or impose new obligations on him, such alterations operate to discharge the indorser from liability, such changes in the contract of indorsement being a material alteration.

Opinion filed April 16, 1917.

Appeal from the District Court of Ward County, *C. M. Cooley,* Special Judge.

Affirmed.

*Palda, Aaker, & Greene* and *I. M. Oseth,* for appellant.

Indorsers on a note are released by reason of an unauthorized extension of time, "by any agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument." No such agreement was here made. Comp. Laws 1913, § 7005.

*F. B. Lambert* and *Geo. A. McGee,* for respondents.

An indorsement upon a promissory note is open to the defense that

stricted indorsement was made only to transfer title to the owner, see note in 28 L.R.A.(N.S.) 530, in which it appears that such evidence is admissible to show want or failure of consideration.

the party indorsing had an agreement that by indorsing no liability would be created; that the indorsee assumed all liability thereon, and that such indorsement was made wholly for the purpose of transferring naked title, and that no consideration passed therefor, and these matters may be shown by parol. Dickinson v. Burke, 8 N. D. 118, 77 N. W. 279; 1 Dan. Neg. Inst. 5th ed. ¶ 720a.

"An indorsement of a promissory note creates no liability of itself, and the indorser is not liable on the indorsement until presentment to the maker and notice to the indorser of such presentment." Yegen v. Northern P. R. Co. 19 N. D. 70, 121 N. W. 207; Baumeister v. Kuntz, 53 Fla. 340, 42 So. 886; 7 Century Dig. Bills & Notes, ¶¶ 997–1006; Galbraith v. Shepard, 43 Wash. 698, 86 Pac. 1113; Worley v. Johnson, 60 Fla. 294, 33 L.R.A.(N.S.) 639, 53 So. 543.

"It is necessary to the validity of an extension of time of payment, that it be upon a sufficient consideration, and to a definite time;" and a creditor, by extending time of payment to his debtor, without the knowledge or consent of a surety, thereby releases such surety. McCormick Harvesting Mach. Co. v. Rae, 9 N. D. 482, 84 N. W. 346; 7 Cyc. 882, 883, and cases cited.

GRACE, J. This is an appeal to this court from the district court of Ward county, and from an order denying motion for judgment *non obstante* or for a new trial.

The complaint, for causes of action against M. R. Sutherland and E. A. Price, alleges that on the 24th day of November, 1909, defendant Sutherland executed and delivered a promissory note in the sum of $27 in favor of the defendant E. A. Price; said note bearing interest at 12 per cent per annum, and due October 15th, 1910. That prior to said date E. A. Price indorsed said note with waiver of protest, and sold and delivered said note for a valuable consideration to the plaintiff. That plaintiff is now and has been ever since said indorsement owner and holder and in possession of said note. The defendant M. R. Sutherland did not answer, and the answer of E. A. Price is substantially as follows: He admits that the defendant M. R. Sutherland executed a certain promissory note in writing as alleged in the complaint, save and except as to the words "protest waived, E. A. Price," and as to this portion of the allegation he enters a specific denial.

The answering defendant further alleges that at the time of the date and execution of said note, and prior thereto, the plaintiff represented and stated to this defendant Price, through its officers, that the said plaintiff bank was at that time negotiating a real estate loan for the said defendant Sutherland; that it would not therefore be necessary to secure said note in any way, but that the plaintiff would take from this defendant the plain and unsecured note of the defendant Sutherland on its (plaintiff's) own responsibility and collect said note out of moneys secured for the said Sutherland out of said loan then being negotiated; that relying on said statement and representation of the plaintiff, and for the purpose of transferring the written title to said note only, and not otherwise, the defendant Price signed said note on the back thereof, but this defendant specifically denies that said note had written on its back, over his signature, the words "protest waived" at the time said signature was made, and this defendant alleges that said words were never placed there with his knowledge or consent.

For a second defense, defendant Price alleges, first, a general denial; makes the same admission as to the execution of the note by Sutherland, and sets forth the same exception as to the words "protest waived" as in the first cause of action. Then he further alleges that since the execution and delivery of said note and the indorsement thereof, and prior to the commencement of this action, the said note has been altered and changed without the knowledge or consent of this defendant and in fraud of his rights by the insertion and writing upon the back of said note, above the signature of this defendant, the words "protest waived;" that by reason of said change, which is material and fraudulent upon the rights of this defendant, said note has become absolutely null and void.

For a third defense, the defendant Price renews his general denial, makes the same admission as to the execution of the note by Sutherland and the same exception as to the words "protest waived" as heretofore referred to, and then further alleges that after the maturity of said note, on the 15th day of December, 1910, at Sawyer, North Dakota, the plaintiff, for a valuable consideration, extended the time of payment of the said note, thereby postponing both the right of the plaintiff and of this defendant Price to enforce payment thereof; that the plaintiff then and there took from the defendant M. R. Sutherland a renewal

note of the said note sued upon, which said note was signed by the said defendant Sutherland and dated December 15th, 1910, due October 15th, 1911, for the sum of five hundred and ninety-four dollars ($594), and by plaintiff's instruction and at the plaintiff's request was made payable to the order of this defendant Price, all this without the assent or consent of the defendant Price, and that no right of recourse against this defendant was reserved, either expressly or otherwise; that said extension was made by the plaintiff of its own volition, for its own benefit, and in the exercise of its ownership of the said note sued upon; that at the time of the execution of the last-mentioned note the plaintiff took chattel security from defendant M. R. Sutherland, securing said note upon certain crops.

The facts in this case are substantially as follows: to wit, this is an action upon a promissory note. It is brought jointly against the maker, M. R. Sutherland, and the indorser, E. A. Price. The note is dated November 24th, 1909, and the due date is October 15th, 1910. Over the signature of the indorser, E. A. Price, on the back of the note, appear the words "protest waived." The note was not paid at maturity, and the holder, the plaintiff bank, on December 15th, 1910, made out another note for the full amount due with interest, in proposed renewal of the old note, made payable to E. A. Price, signed by M. R. Sutherland, and sent it to the defendant Price for approval and indorsement in the same manner as the original note. On June 21st, 1912, approximately a year and a half afterwards, this note was returned to the bank by Price, without his indorsement, and with a letter from Price stating that he did not consider himself bound upon the original note, and that he would not consent to an extension of the old note.

The bank demanded payment from Price, and Price refused payment. The bank brought a suit against Sutherland and Price. The defendant Sutherland did not answer, and defaulted in the action. Price answered, denying liability on the note, setting up the defenses that the note had been altered since his indorsement thereof by the addition of the words "protest waived." That he had been induced to indorse the note on false representations on the part of the bank and with the understanding that he was not a guarantor of payment,

36 N. D.—32.

and that the time for payment had been extended to the maker by the bank without the consent of Price, the indorser.

The defense further sets forth that the plaintiff in the first instance took the note of Sutherland on its own responsibility to collect said note out of moneys secured for the said Sutherland out of a certain loan then being negotiated. The jury returned a verdict for the defendant for a dismissal of the action as against Price, after which the plaintiff moved for a new trial, which was refused. The dealings of the plaintiff bank with Price were had through its cashier, H. O. Dalen. Dalen left the employ of the plaintiff bank about the 1st of March, 1912. The claim of Price is that his indorsement of the note sued upon was made for the sole and only purpose of transferring title.

Plaintiff specifies the following errors of law, in which it relies in its appeal to this court in this action: The first error alleged is as follows: "The court erred in instructing the jury as follows: 'You are instructed that you should find for the plaintiff in this case unless you should find that the defendant has established by a preponderance of the evidence either (1) that the contract of indorsement made by the defendant Price when he indorsed the note to the plaintiff was changed without his knowledge, authority, or consent by the writing of the words 'protest waived' above his signature."

This was a correct instruction, and not error. It is an issue raised in the case whether or not when Price indorsed the note to the plaintiff, it was changed without his knowledge, authority, or consent' by the writing of the words "protest waived" above his signature.

Price was asked and answered the following questions:

Q. You may examine exhibit 1 and state whether that exhibit is in the same condition now that it was at the time you put your name on the back of it. Examine both sides of it.

A. No, sir.

Q. What is the difference in exhibit 1 now and at the time you placed your name on the back of it?

A. That writing above my name.

Q. Protest waived?

A. Yes, sir.

Q. That wasn't on the exhibit at the time you placed your name on it?

A. No, sir.

Q. And you placed the indorsement on the back in the bank building?

A. Yes, sir.

Q. At that time the words "protest waived" were not there?

A. They were not.

Q. You never at any time received notice of that note being protested?

A. No, sir.

Q. You never received a notice of dishonor?

A. No, sir.

Q. Did you, Mr. Price, at any time authorize anyone to put the words "protest waived" on that note?

A. No, sir.

Q. When did you first find out that the words "protest waived" were inserted on that note?

A. When this action was started.

Mr. Dalen, the cashier, was under examination, and he was asked the following questions:

Q. Was that "protest waived" put on there before or after Mr. Price signed it?

A. I could not say.

So that this question was a question for the jury, which was properly submitted to them. They had a perfect right which they did to weigh the testimony concerning the facts, and pass judgment on such facts. Further, an indorsement of a promissory note creates no obligation of itself, and the indorser is not liable until presentment to the maker and notice to the indorser of such presentment. See A. B. Farquhar Co. v. Higham, 16 N. D. 106, 112 N. W. 557.

As to plaintiff's second assignment of error, which is an instruction by the court to the jury as follows: "If you find from the evidence that the account of Price against Sutherland for the drilling of a well was turned over to the bank in part payment for a piece of land, and that the note was taken by the officers of the bank in Mr. Price's name, without any previous agreement on the part of Mr. Price to indorse

the note, and that no new consideration was given to Mr. Price for the indorsement of the note, then such indorsement was made without consideration and cannot be enforced against Price, and under these circumstances your verdict should be for the defendant."

It will appear that this was a correct instruction of law, and that there was no error in giving such instruction.   There was an allegation in the answer that the plaintiff took over said note on its own responsibility and was to collect the same out of certain moneys to be received through a loan made by Sutherland, and it is claimed by the defendant Price that he turned the Sutherland account over to the bank while yet it was in the form of an account and before such account was made into a note.

Price was examined as follows concerning this:

Q. Did you during the fall of 1909 turn over any accounts to the Sawyer State Bank?

A. Yes, a good many of them.

Q. Including Mr. M. R. Sutherland's account?

A. Yes.

Q. In the accounts which you testified was this Sutherland account included?

A. Yes, sir.

And Price, further testifying, says that "the bank had a quarter section of land they wanted to sell me and I had some money, and the bank said, if I would pay half they would take the balance in notes and account, so I traded accounts and $1,500 in cash to the bank for this quarter section of land." ·

And the question was asked:

Q. Was the Sutherland account included in those accounts transferred to the bank?

A. Yes, sir.

Q. It was in a note at that time?

A. No, sir.

Q. Did you ever take anything on the Sutherland account yourself?

A. I did not.

Q. Did you receive any consideration for the indorsement on the note?

A. No, sir. ·

Q. Did you give the bank any assignment of these accounts?

A. Yes, sir.

Q. In writing?

A. I think so.

Mr. Dalen, the cashier of the bank, also testifies to the taking of this account by the bank, as follows:

Q. As cashier of the Sawyer State Bank, did you have any negotiations with Mr. Price in regard to the same?

A. I transacted practically all his settlements and his business.

Q. I call your attention to the indorsement on said note signed E. A. Price, and ask you if you saw that indorsement by Mr. Price?

A. I did not.

Q. Did you purchase it from E. A. Price, one of the defendants in this case?

A. Yes, I think it was in an account at that time.

Q. Don't remember the indorsements on the note?

A. I do not recall it. Mr. Price was one of the heaviest customers in the bank. I had more than this transaction with Mr. Price.

So that it appears from the testimony of both Price and Dalen, the cashier, that the bank actually purchased and became absolute owner of the account, and if such is the fact, the execution of the note by Sutherland to Price and the indorsement thereof by Price was really a matter of accommodation for the bank and for the purpose only of passing the title of the note to it, and without any consideration to Price. It would appear, therefore, that the instruction given was a correct one and there was no error in giving it, and the finding of the jury thereon is conclusive.

Discussing the third assignment of error, which is an objection to the introduction of evidence relative to a certain transaction involving the sale of land by the plaintiff bank to the defendant Price, we examined the same and find there was no error in receiving such evidence. The main question is: "Did the bank purchase the account which Sutherland owed Price?" In what manner the bank gave Price credit for it, whether in a land deal or some other deal or transaction is, immaterial. Price testifies as to the land deal that he turned over various accounts, including the Sutherland account, to the bank, and

$1,500 in cash in payment for a piece of land, which testimony seems to be undisputed, and is taken as true. We repeat, the main question is: "Did the bank purchase the account?" The evidence conclusively shows that it did, and the subsequent execution of the note and the indorsement thereof in the manner Price testifies to was for the accommodation of the bank for the purpose of passing the naked title of the note to the bank and without any consideration to Price for his indorsement. The disposition of this assignment of error in this manner also disposes of the assignment of error number 4. Considering assignment of error number 5, and considering all the testimony to the case, the verdict of the jury is abundantly sustained by the evidence. Considering assignment of error number 6, the court did not err in denying the plaintiff's motion for judgment notwithstanding the verdict or for a new trial.

Among the questions of fact submitted by the trial court to the jury were:

First. Whether or not there was a material alteration in said note by the writing of the words "protest waived" above the signature on the back of said note.

Second. That the indorsement by Price to plaintiff was without any consideration moving to the defendant Price, and that said indorsement was made simply for the purpose of transferring title to said note to the plaintiff.

Third. Whether or not the account owing from Sutherland to Price for the drilling of the well was turned over and purchased by the bank and received in part payment for a piece of land without any previous agreement on the part of price to indorse the note, and that no new consideration was given to Price for the indorsement of the note. The question whether or not there was any extension of the note was not submitted to the jury. And the jury considered all these issues of fact submitted to them and returned a verdict in favor of the defendant. Their findings upon all of these matters and facts are conclusive. The verdict of the jury is abundantly sustained by the evidence, and their verdict is not contrary to the evidence and the law, but is in accordance therewith.

The judgment of the District Court is in all things affirmed with costs of both courts.