E. S. ROUTIER, Respondent, v. A. L. WILLIAMS and N. J. Roden-
berg, Doing Business as Lake Fuel Company, Appellants.

(204 N. W. 678.)

**Appeal and error — case determined by trial court on only theory presented
by counsel, other questions cannot be raised in supreme court.**

1. Where on the trial of a case counsel declares in open court that only a
certain question is involved in the case, and the case is submitted to and deter-
mined by the trial court on this theory, other questions cannot be raised in the
appellate court.

**Bills and notes — regular "indorsement in blank" is contract in writing to
pay note if maker fails to do so.**

2. A regular blank endorsement of a negotiable promissory note is an ex-
press contract in writing by the terms of which the endorser agrees to pay the
note to the holder thereof if the maker fails to do so, provided the note at
maturity is duly presented to the maker, and due notice of non-payment is
given to the endorser.

**Evidence — contract evidenced by regular blank indorsement of note may
not be varied or contradicted by parol evidence.**

3. The contract evidenced by a regular blank endorsement of a negotiable note
is subject to the general rule that the terms of a written contract may not be
varied or contradicted by parol evidence.

Opinion filed March 11, 1925. Rehearing denied June 14, 1925.

Appeal and Error, 3 C. J. § 618 p. 718 n. 50; § 623 p. 727 n. 98; 4 C. J. § 2609
p. 701 n. 49. Bills and Notes, 8 C. J. § 558 p. 376 n. 18, p. 377 n. 19. Evidence,
22 C. J. § 1446 p. 1092 n. 47; § 1542 p. 1153 n. 9; § 1560 p. 1165 n. 85, p. 1166 n.
89; § 1621 p. 1215 n. 65.

Appeal from the District Court of Ramsey County, *Buttz,* J.

Defendants appeal from a judgment and from an order denying a
motion for a new trial.

Affirmed.

*Cuthbert & Adamson,* for appellants.

In an action against the indorser of a note it is not sufficient to al-
lege that upon maturity the note was duly presented for payment, and

Note.—(1) Limitation of review to theory of case below, see 2 R. C. L. 184; 1
R. C. L. Supp. 428; 4 R. C. L. Supp. 89; 5 R. C. L. Supp. 78.

the indorser duly notified of non-payment. The allegation and the evidence must show the demand and notice to have been upon such a day as will charge the defendant. Hoyland v. National Bank, 137 Ky. 682.

An allegation that due notice of the protest of a note was duly given to an indorser is a sufficient allegation of notice of dishonor; the term protest including in a popular sense all the steps taken to fix the liability of an indorser, and the word duly, in legal parlance, meaning "according to law" and relating not to form only, but including both form and substance. Sherman v. Ecker, 59 Misc. 216, 110 N. Y. Supp. 265.

Where a statute authorized suit on a note by motion and notice, the notice must state a cause of action, and in a suit against an indorser it must show that the note was protested or notice of dishonor given. Security Loan & T. Co. v. Fields, 110 Va. 827, 67 S. E. 342.

Failure to notify an indorser of an installment note of the nonpayment of previous installments does not affect his liability for later installments of the nonpayment of which he has been duly notified. Hopkins v. Merrill, 79 Conn. 626, 66 Atl. 174.

It is elementary that parol evidence is never admissible to contradict or vary the terms of a valid written instrument. While this general principle is admitted to be applicable, to all contracts written in full, some authorities are not willing to apply this principle to those contracts which are raised from implication by the operation of law such, for instance, as indorsements in blank. Such seems to be the rule in Pennsylvania, North Carolina, Florida, Colorado, and Connecticut. Hawkins v. Shields, 100 Miss. 739, 4 A.L.R. 763, 57 So. 4.

If the law conclusively presumed the liability created by an indorsement in blank of commercial paper, then, of course, the actual terms of the contract would not be a proper subject of inquiry, and neither party would be permitted to show by parol the true agreement. But the presumption of liability arising from such an indorsement is prima facie, merely and not conclusive, hence, as against all except bona fide holders for value, the true terms of the contract may be shown by evidence resting in parol. 3 R. C. L. 974–976.

A note or bill may be sold in the market for less than its value; and the payee may endorse the note so as to pass the title. Such a trans-

action would not necessarily be usurious but the indorser in such case would not be liable for the payment of the note. This transaction would be a sale, nothing more nor less. Cowles v. McVicker, 3 Wis. 637.

The supreme court of Nebraska, State Bank v. Howe (1922) (Neb.) 197 N. W. 77, reaffirms its adherence to the minority rule that as between the indorser in blank and indorsee, the indorser may show a parol agreement that, at the time of making the indorsement and delivery, of the note, the indorsee would look to the maker of the note and to him alone for payment, and that the indorsement was made only for the purpose of transferring title to the note. Security Sav. Bank v. Rhodes (Neb.) 20 A.L.R. 412, 185 N. W. 421.

Parol evidence is admissible to prove whether the holder is in possession of a note as owner or agent for collection, when innocent parties will not be affected thereby. Carhart Bros. v. Wynn, 22 Ga. 24.

Parol testimony may be given where the indorsement was, as in the case at bar, solely to transfer title. 188 Iowa, 168, 175 N. W. 963; note in 22 A.L.R. 528.

*Simness, Duffy & Wheeler,* for respondent.

The indorser cannot show by parol an agreement that he should indorse the instrument merely to transfer title to the indorsee, and should not incur any liability thereon. 4 A.L.R. 772; United States Bank v. Dunn, 6 Pet. 51, 8 L. ed. 316; Martin v. Cole, 104 U. S. 30, 26 L. ed. 647; Day v. Thompson, 65 Ala. 269; Martin v. Cole, 3 Colo. 113; 104 U. S. 30, 26 L. ed. 647; Dunn v. Ghost, 5 Colo. 134.

CHRISTIANSON, Ch. J. This is an action by the endorsee against the endorsers in blank of a promissory note. The complaint alleges that the defendants were co-partners under the firm name of Lake Fuel Company; that on or about August 8th, 1921, one Gust Peterson executed and delivered his promissory note in writing, by the terms of which he promised to pay to the Lake Fuel Company sixty days thereafter the sum of $350.00, with interest at the rate of 8% per annum; that thereafter the said defendants, payees in said note, duly endorsed the same to the plaintiff; that at maturity thereof the plaintiff duly demanded payment of said note both from the maker and from the defendants endorsers; that payment was refused; that plain-

tiff is the owner and holder of the note and that no part thereof has been paid.

The answer admits that the defendants were a co-partnership as alleged in the complaint. It further admits the execution of the note, and "that said note was endorsed by the defendants to plaintiff herein, . . . and that plaintiff is the owner and holder of said note." The answer further alleges "that said note was accepted by plaintiff without recourse." The answer denies that the note was presented to the defendants for payment; and alleges that "defendants had no notice that the note was presented for payment until . . . the latter part of December, 1921."

The case was tried to a jury upon the issues thus framed and resulted in a directed verdict in favor of the plaintiff. Defendants moved for a new trial. The motion was denied and defendants have appealed.

The undisputed evidence shows that during the years 1920 and 1921 the defendants A. L. Williams and N. J. Rodenberg were co-partners, engaged in the fuel business under the firm name of Lake Fuel Company; that on or about September 10th, 1921 the partnership bought from the plaintiff a certain barn and as payment delivered to him $50.00 worth of coal and the note in controversy here. Before the note was delivered to the plaintiff it was endorsed in the name of the partnership by one of the partners. Upon the trial, the defendant Williams having been called as a witness in his own behalf, the following proceedings were had:

### Direct Examination:

Q. Mr. Williams do you recall the incident of this transaction relating to this note and the barn with Mr. Routier?

A. Yes sir.

Q. Just go ahead and relate the circumstances commencing with Mr. Routier coming down to your office?

Plaintiff's counsel: If the Court please we object to this line of testimony because it is an attempt to vary by parol the terms of a written contract, a written endorsement. If counsel wants to confine

his questions to things that don't enter into a variation of that endorsement it will be all right.

Court: What have you got to say to that?

Defendants' Counsel: That might be applicable if the note was in the hands of another person but it is not applicable as to this man.

Court: That isn't the point, whether or not he is an innocent holder, but he says he has a written contract here, that that endorsement constitutes a written contract between these parties and that you are seeking to vary that by parol testimony.

Defendants' Counsel: It isn't a contract, it is an endorsement. If I trade a note with the understanding that it is a trade and they ask me to endorse it for the purpose of transferring title I certainly can show it. . . .

Court: Sustained.

Defendants' Counsel: So that we can keep the record I understand the ruling of the Court is this: that the evidence offered under the defense as set forth in the answer that the contract pleaded by the defendants was that the note was accepted without recourse is not admissible; that any testimony or claims by the defendants as to the note having been given without recourse under the contract made between the parties is not admissible as tending to vary the terms of the endorsement on the note—I simply want to get this for the record.

Court: That is the record. . . .

Defendants' Counsel: I would like to ask permission to amend the answer so as to set forth briefly the facts as stated to the Court. In other words to show that the endorsement was the result of a transaction whereby this note together with $50.00 worth of coal was traded to the defendants in consideration of a barn and that the endorsement was made simply for the purpose of transferring title under the contract of the parties, and that under the contract he was to look solely to the maker of the note for collection.

(Plaintiff's Counsel object to amendment of answer.).

Court: I don't see that the amendment would prejudice anybody but I don't see how it would do any good. I don't think it is anything but what you have pleaded except it enlarges on what you have already pleaded and I don't think it gets you anywhere. I think if you can prove your case under this amendment you could prove it un-

der your original answer—I realize you didn't draw these pleadings. Denied.

(Both parties rest.)

Plaintiff's Counsel: At this time the plaintiff moves the court to direct a verdict in favor of the plaintiff and against the defendants for the amou r prayed for.

Defendants' Counsel: I would like to have this put on the record—I think it would be foolish and futile for me to object—it would simply make further work.

Court: Under my view of the law there is nothing to submit to the jury and so—

Defendants' Counsel: No there is nothing to submit to the jury.

Court: Of course you don't admit that my ruling is right I understand that—

Defendants' Counsel: I want to protect myself on the record. I don't want to consent to the direction of a verdict if it is going to waive the proposition of law. . . .

Court: Let the records show that the sole question that this case is turning on is this matter of varying the terms of a written contract, viz.: the endorsement on the back of this note. That is the only thing in controversy here as I understand it so far as the law of this case is concerned..

Defendants' Counsel: Just as I pointed out before I want to show a contract between the parties as being an antecedent contract and that we are entitled to show that the endorsement was purely a matter of transfer of title under the antecedent contract.

Court: And that you aren't bound to pay this note and are not liable on it anyway?

Defendants' Counsel: That is it.

Court: That is the only defense you are making?

Defendants' Counsel: That is it.

On this appeal defendants present the following specifications of error:

1. The Court erred in directing a verdict with no proof on the part of the plaintiff that at the maturity of the note in question the plaintiff demanded payment of the maker and on payment being refused demanded payment of the endorsers.

2. That the Court erred in not allowing testimony showing that the endorsement was for the sole purpose of transferring title to plaintiff, and was an accommodation to plaintiff, he being the owner of the note at the time of the endorsement pursuant to an agreement previously made, wherein plaintiff traded defendants a barn for the note in question and fifty dollars worth of coal. And that the endorsement was an after-thought on plaintiff's part and an accommodation on defendants' part.

3. That the Court should have allowed the amendment applied for by defendants to the answer setting forth more fully the facts.

1. The first assignment of error is without merit. There was positive proof of the ultimate fact which the assignment says had no support in the evidence. On direct examination, plaintiff testified:

Q. The note shows on its face to have been due on October 8th, did you demand payment of the maker of the note, Gust Peterson?

A. Yes.

Q. Did you demand payment from Mr. Williams and Mr. Rodenberg?

A. Yes sir.

Furthermore, no question was raised upon the trial as to presentment for payment, or notice of dishonor. On the contrary, as appears from the record quoted above, the case was tried upon the theory that the only question involved was whether the defendants were entitled to introduce parol evidence to show that the blank endorsement was in fact a qualified one. Under well settled rules, the defendants cannot now be heard to say that the proof adduced by the plaintiff upon the question of presentment for payment, and notice of dishonor was too uncertain or indefinite. 3 C. J. 389 et seq.

2-3. Specifications 2 and 3 may be considered together. Both involve the question whether the defendants were entitled to introduce parol evidence to show that the blank indorsement was in fact a qualified one; that the sole purpose of the endorsement was to transfer title of the note and that no liability was assumed thereby.

The Negotiable Instruments Act provides:

An instrument payable to order is negotiated by the endorsement of

the holder completed by delivery. Neg. Inst. Law § 30; Comp. Laws 1913, § 6915.

"The endorsement must be written on the instrument itself or upon a paper attached thereto. The signature of the endorser, without additional words, is a sufficient endorsement." Neg. Inst. Law, § 31; Comp. Laws, 1913, § 6915.

"A person placing his signature upon an instrument otherwise than as a maker, drawer or acceptor is deemed to be an endorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity." Neg. Inst. Law, § 63; Comp. Laws, 1913, § 6948.

"Every endorser who endorses without qualification, warrants to all subsequent holders in due course:

"1. That the instrument is genuine and in all respects what it purports to be;

"2. That he has good title to it;

"3. That all prior parties had capacity to contract;

"4. That the instrument is at the time of his endorsement valid and subsisting.

"And, in addition, he engages that on due presentment, it shall be accepted or paid, or both, as the case may be, according to its entor, and that if it be dishonored, and the necessary proceedings on dishonor be duly taken he will pay the amount thereof to the holder, or to any subsequent endorser who may be compelled to pay it." Neg. Inst. Law, § 66; Comp. Laws, 1913, § 6951.

While there is some conflict in the authorities as to the contractual status and effect of a blank endorsement, as between the immediate parties, we are of the opinion that the true rule is that the contract evidenced by the endorsement and delivery of a negotiable note is an express written contract with certain fixed and definite terms and that the terms of such contract may not be contradicted or varied by parol evidence. Martin v. Cole, 104 U. S. 30, 26 L. ed. 647; Schine v. Johnson, 92 Conn. 590, 4 A.L.R. 744, 103 Atl. 974; Palmersheim v. Hertel, 179 Wis. 291, 191 N. W. 567; Baird v. Publishers' Nat. Serv. Bureau, 51 N. D. 374, 199 N. W. 759; 3 Jones, Ev. § 496, p. 409. See also 5 Uniform Laws Anno. p. 320; Crawford, Anno. Neg. Inst. Law, 4th ed. p. 123; Brannan, Neg. Inst. Law, 3d ed. p. 143. The provi-

sions of the Negotiable Instruments Act quoted above recite the specific obligations assumed by a general endorser of a negotiable note and we see no reason why the terms of this contract are not as binding as though they were, in fact, written out in full over the signature of the endorser. Martin v. Cole, supra; Palmersheim v. Hertel, 179 Wis. 291, 191 N. W. 567.

"Where a man writes his name, without any thing more, on the back of a negotiable promissory note, he agrees that he will pay the note to the holder on receiving due notice that the maker, on demand made at the proper time, has neglected to pay it. This is the legal effect of the indorsement, and the case is not open to any intendment, certainly not to the presumption that the party meant to contract a different obligation." Seabury v. Hungerford, 2 Hill, 80-82. In other words, we are of the opinion that the contract evidenced by a regular blank endorsement of a negotiable note is, even as between the immediate parties thereto, subject to the rule—applicable to other written contracts—that the terms thereof may not be contradicted or varied by parol evidence. But, of course, it is also subject to the limitations which inhere in the rule stated. And, hence, while the endorser may not, by parol, vary or contradict the terms of the contract which the Negotiable Instruments Act, in effect, writes over his signature, he may—as in case of other written contracts—show want or failure of consideration; that the contract was delivered conditionally or for a special purpose; or that it is invalid on account of fraud or mistake.

Appellants contend that the evidence which they sought to introduce, and the agreement which they set forth in their proposed amendment of the answer, is not within the bar of the rule which inhibits the admission of parol evidence for the purpose of contradicting or varying the terms of a written contract. They assert that at some time prior to the endorsement and delivery of the note, the plaintiff and defendants entered into an oral contract under the terms of which the plaintiff sold a certain barn to the defendants, and the defendants in payment of the barn agreed to deliver to the plaintiff a certain quantity of coal and the note in suit; that as a result of this agreement the note became plaintiff's property; and that at a subsequent date, that is,—some time after the plaintiff had become the owner of the note,—the

52 N. D.—51.

defendants endorsed the note for the sole purpose of transferring title to the plaintiff.

In our opinion appellants' argument is predicated upon a state of facts not established by the record. The second and third specifications of error rest upon two rulings (1) the sustaining of an objection to a question propounded to the defendant, Williams; and (2) the refusal of a proposed amendment of the answer.

Before the defendant, Williams, was called as a witness in his own behalf, the plaintiff had been cross-examined at considerable length in regard to the transaction between the plaintiff and the defendants, including the endorsement of the note. It was nowhere intimated in such cross-examination that the endorsement was made at a time subsequent to the time when the deal for the barn was made. There was no suggestion that there were two separate transactions:—first, one in which the parties made a deal whereby plaintiff became the owner of the note, and a subsequent transaction—disassociated from the first— in which the defendant endorsed the note which then was, and for some time prior thereto had been, the property of the plaintiff. On the contrary all the questions asked and all the answers given during such cross-examination,—and all the evidence adduced upon the trial—were consistent only with the theory that there was only one transaction between the parties; and that during this transaction the terms of the deal were agreed upon, and the note endorsed and delivered to the plaintiff. In fact the very question to which the objection was sustained, and the one immediately preceding it, indicates that there was only one transaction. The questions were:

Q. Mr. Williams do you recall the incident of this transaction relating to this note and the barn with Mr. Routier?

A. Yes sir.

Q. Just go ahead and relate the circumstances commencing with Mr. Routier coming down to your office?

It will be noted that the inquiry is as to "this transaction relating to this note and the barn." And, according to the undisputed evidence the note was endorsed before it was delivered to the plaintiff. In light of the record, we can understand the reference of defendants' counsel to an "antecedent contract" to mean only this:—that defend-

ants claim and sought to show that at the time they bought the barn from the plaintiff and endorsed and delivered the note to. him, they first talked the terms of the deal over, and it was agreed that plaintiff should sell the barn to the defendants, and receive from them in payment therefor the note in suit and a certain quantity of coal; that during this part of the conversation it was agreed that plaintiff should accept the note without the general endorsement of the defendants; that immediately after this conversation was had, at the same time and place, and as a part of the same general transaction in which they were then engaged, the defendants endorsed the note in blank and delivered it to the plaintiff for the purpose of transferring title, and with the continued understanding that they assumed no liability by their endorsement. This, we think, is the most favorable view to the plaintiff that the condition of the record warrants. And, we are agreed that in these circumstances the parol agreement which defendants sought to establish is within the inhibition of the parol evidence rule. Schine v. Johnson, 92 Conn. 590, 4 A.L.R. 744, 103 Atl. 974; Baird v. Publishers' Nat. Serv. Bureau, 51 N. D. 374, 199 N. W. 759; Martin v. Cole, 104 U. S. 30, 26 L. ed. 647; 3 Jones, Ev. pp. 150, 409.

The judgment and order appealed from are affirmed.

JOHNSON, BURKE, BIRDZELL, and NUESSLE, JJ., concur.

## On petition for rehearing.

PER CURIAM. Counsel for the appellant have filed a petition for rehearing. It is contended that the holding summarized in the third paragraph of the syllabus, to the effect that the contract evidenced by a regular blank indorsement is within the general rule which excludes parol evidence to vary or contradict a written contract, is contrary to the previous decisions of this court in the cases of Dickinson v. Burke, 8 N. D. 118, 77 N. W. 279, and Sawyer State Bank v. Sutherland, 36 N. D. 493, 162 N. W. 696, and it is said that those cases should either be followed or expressly overruled. The position taken in the petition is somewhat influenced by a view of the record that is not shared by this court, as is evidenced by the original opinion herein. Counsel's position, as we understand it, is substantially this:

That if at the time the note was indorsed by the defendants a trade had been completed under the terms of a contract whereby the plaintiff was to receive the note in question wholly upon the strength of the responsibility of the prior parties and without recourse to the defendants, and the note had been transferred without indorsement, the subsequent indorsement would be without any consideration and the terms of the contract under which it had previously become the property of the plaintiff could be shown to establish this lack of consideration. Under the record before this court, we can not agree with counsel that the evidence was offered for the purpose of establishing such a transaction. We think the question presented to the district court on the record here was the question as to the right to introduce parol evidence to establish an agreement *contemporaneous* with the indorsement to the effect that the indorsers should not be liable upon the note according to the contract evidenced by the form of the indorsement. Is this holding contrary to the decisions referred to and is it in accord with the law?

In Dickinson v. Burke, supra, it appeared that one Andrew Burke had drawn his check upon the Marine National Bank of Duluth, payable to the defendant Moug; that Moug had thereafter indorsed the check to the plaintiff Dickinson; that the check was presented for payment and dishonored. Burke and Moug were sued and the latter alone defended. It appeared that the check represented the proceeds of a car of grain which the defendant, Moug, had shipped to Burke, who was a grain commission merchant; that the grain had been shipped through the plaintiff Dickinson upon his solicitation and in reliance upon his express agreement that he would guarantee Moug against loss in case of Burke's failure and that he would take Burke's check as his own property and assume entire responsibility for its collection and give the defendant his own personal check in lieu thereof; that the defendant's indorsement thereof should be merely for the purpose of transferring title. It seems clear from the opinion in that case that the court recognized the force of the parol evidence rule as applied to any contemporaneous agreement, as on page 120 it is said:

"Appellant, however, insists that even though the parol agreement was as alleged by the defendant, yet it was blotted out and superseded by the subsequent written indorsement. The wholesome doctrine thus

urged, which is found embodied in the Revised Codes (§ 3888), is not applicable to the facts as they exist in this case. There is no controversy as to the contract of indorsement. It is complete in itself, and admitted. The dispute is as to the alleged agreement preceding the shipment. It would, indeed, be a gross perversion of the doctrine relied upon to make it a means of destroying their prior contract, which the evidence shows was performed fully on the part of the defendant, and was entirely separate and distinct from the subsequent indorsement."

In other words, the court recognized that there were involved two contracts; one a contract which should cover the entire transaction concerning the marketing of Moug's grain, at Dickinson's solicitation, through Burke acting as a commission merchant; and another subsequent contract of indorsement, the latter being a mere step in the performance of the former contract and being neither an appropriate form of agreement in which to embrace the former contract, nor actually intended as the embodiment of it. The opinion merely gives effect to the prior agreement, which was not superseded by the subsequent one. It shows, furthermore, that there was no consideration for the indorsement by the defendant in that he received nothing therefor that he was not otherwise entitled to receive under the contract existing between him and Dickinson. The evidence shows that the indorsement was substantially for Dickinson's accommodation.

Similarly, in the case of Sawyer State Bank v. Sutherland, supra, the assignee and purchaser of an account had procured the debtor to give a promissory note made payable to the original owner of the account instead of to himself. He later procured the payee named to indorse the note, and the holding was to the effect that the indorsement was without consideration. It is elementary that parol evidence is admissible to establish absence of consideration and the original opinion herein does not question that principle.

Under the record in the instant case it appears that the defendants sought to show that, at the time the note was indorsed in blank, there was an agreement that the indorsers should not be liable. If this could be shown it is difficult to conceive of any contemporaneous parol agreement affecting the terms of the contract of indorsement that could not be shown. If it could be shown that a general indorsement was intended

to be "without recourse," it could be shown that an indorsement "without recourse" was intended to carry a guaranty of payment. There would be nothing left of the parol evidence rule as applied to indorsements. Counsel seem to concede that the weight of authority is in accord with the opinion and we deem it unnecessary to add to the citation of authorities therein contained. While it is useless to attempt to reconcile the decided cases, it may be worth while, in view of the difficulty in applying the rule under varying circumstances, to refer to the test suggested by Daniel (1 Dan. Neg. Inst. 6th ed. § 723): "When it appears that the indorsement was accompanied by a transfer for value, and is unimpeached by fraud, it imports a distinct liability which can not be varied."

We are clearly of the opinion that this case is not controlled by Dickinson v. Burke, 8 N. D. 118, 77 N. W. 279, or Sawyer State Bank v. Sutherland, 36 N. D. 493, 162 N. W. 696.

The petition for rehearing is denied.

CHRISTIANSON, Ch. J., and BIRDZELL, BURKE, JOHNSON, and NUESSLE, JJ., concur.