E. N. DOUGHERTY, Plaintiff, Petitioner, v. FRANK S. SHANKLAND, Judge, et al., Defendants, Respondents.

No. 42263.

NOVEMBER 14, 1933.

E. L. Carroll, O. M. Slaymaker and R. E. Killmar, for plaintiff.

W. E. Miller, for defendants.

KINTZINGER, J.—■■■ The Central National Bank & Trust Company of Des Moines brought an action at law against E. N. Dougherty in Polk county, Iowa, on a promissory note, executed to it by the Farmers & Merchants Savings Bank of Creston, Iowa, and payable at Des Moines, Iowa. This note was indorsed in blank by "E. N. Dougherty" who then was and still is a resident and citizen of Union county, Iowa.

The facts are undisputed, and the only question raised is whether the district court of Polk county had jurisdiction to proceed with the trial of the action in Polk county against E. N. Dougherty, a resident of Union county, after he had filed a motion for a change of place of trial to the county of his residence. The motion was overruled—hence this writ.

It is conceded that a defendant is ordinarily entitled to have the place of trial changed to the county of his residence. Code sections 11049 and 11050. The maker of the note was not a party to the action brought against Dougherty, as indorser on the note. By placing his name on the back of the note, in blank, he became simply an indorser. Code, sections 9523 and 9524.

Plaintiff contends that he is entitled to a change of place of trial to the county of his residence under the statutes hereinabove referred to. This is conceded unless the Negotiable Instruments Act authorizes the action in the county where the note is payable.

The defendant contends that under the Negotiable Instruments Act, the plaintiff's blank indorsement on the note creates an obligation on his part to pay the note in Polk county where it is made payable. The Negotiable Instruments Act, in section 9526 of the Code, provides as follows:

"Every indorser who indorses without qualification, warrants to all subsequent holders in due course:

"1. The matters and things mentioned in subdivisions 1, 2, and 3 of the next preceding section; and

"2. That the instrument is at the time of his indorsement valid and subsisting.

"And, in addition, *he engages that on due presentment, it shall be accepted* or *paid, or both, as the case may be, according to its tenor,* and *that if it be dishonored, and the necessary proceedings on dishonor be duly taken, he will pay the amount thereof to the holder,* or to any subsequent indorser who may be compelled to pay it." (Italics ours.)

The "engagements" and obligations undertaken by an indorser are contained in division 2 of the foregoing section. Before the adoption of the "Negotiable Instruments Act," the obligations assumed by an indorser were implied by law. Now they are statutory.

An analysis of division 2 of this act will show what engagements an indorser assumes. They are:

1. *"That the note will be paid upon due presentment according to its tenor."* This means that the note in question, being payable in Polk county, will be there paid by the maker on due presentment. Such an agreement was also implied for him under the common law.

2. The second "engagement" is that *if the note be dishonored, and if the necessary proceedings on dishonor be duly taken, then, "he will pay the amount thereof to the holder."*

Although the indorser "engages" that the note will be paid by the maker on due presentment, the statute does not require *the indorser to pay on due presentment.* The Negotiable Instruments Act is silent as to where the indorser is to pay the holder the amount

due on the note. His obligation to pay does not accrue *until after the note has been duly presented for payment, and not then, until after the necessary proceedings on dishonor have been taken.*

An indorser is not a joint obligor with the maker. Gardner v. Pitcher, 185 N. Y. 534, 77 N. E. 1187; Williams v. Peninsular Grocery Co., 73 Fla. 937, 75 So. 517; Witt v. Campbell-Lakin Segar Co., 66 Or. 144, 134 P. 316.

The indorsement of a promissory note creates no obligation on the indorser until after presentment to the maker, dishonored by him, and the necessary proceedings on dishonor have been duly taken. The liability of an indorser to the holder, after presentment, demand, and notice, is independent of the liability of the maker and is separate and distinct therefrom. Wood v. Roe, 205 Iowa 399, 218 N. W. 51; Sawyer State Bank v. Sutherland, 36 N. D. 493, 162 N. W. 696; Navajo County Bank v. Dolson, 163 Cal. 485, 126 P. 153, 41 L. R. A. (N. S.) 787; Davis v. McColl (Mo. App.) 184 S. W. 920; Morgan v. Huffmann, 76 Mont. 396, 247 P. 326; Horowitz v. Wollowitz, 59 Misc. 520, 110 N. Y. S. 972; Citizens Trust Co. v. Zoller, 121 Misc. 451, 201 N. Y. S. 179; Wachovia Bank & Trust Co. v. Crafton, 181 N. C. 404, 107 S. E. 316, 16 A. L. R. 1375; Farquhar Co. v. Higham, 16 N. D. 106, 112 N. W. 557.

In the case of Wood v. Roe, 205 Iowa 399, loc. cit. 403, 218 N. W. 51, we said:

"Plaintiff's petition is wholly wanting in any allegation of presentation of the instrument to Nuckolls [the maker]. This ordinarily would be fatal. There is an allegation, however, that presentation of the paper at the Grinnell Savings Bank was waived, but by whom it was waived is not stated, but, even if presentment at the Grinnell Savings Bank were waived, that would not waive presentation on Nuckolls, the maker of the instrument. This allegation does not aid the defect of want of allegation of presentation. *A valid presentation consists of something more than a mere demand. It requires personal demand at the place, with the note in readiness to exhibit, if required, and to receive payment and surrender it, if the debtor is willing to pay.* [Italics ours] Greco v. Lo Monte (Sup.) 162 N. Y. S. 982; Gilpin v. Savage, 201 N. Y. 167, 94 N. E. 656, 34 L. R. A. (N. S.) 417, Ann. Cas. 1912A 861. The fact that the bank specified as the place of payment is insolvent and in the hands of a receiver is no excuse for nonpresentment. Schlesinger v. Schultz, 110 App. Div. 356, 96 N. Y. S. 383."

While the questions of failure of presentation, or of proceedings on dishonor are not raised in the case at bar, the case of Wood v. Roe is authority for the rule that the engagement of an indorser to pay the amount of the note is a separate, distinct, and independent contract which does not accrue until after due presentment has been made and notice of dishonor given. His obligation to pay does not arise until after the note has been duly presented for payment, and not then until after the necessary proceedings on dishonor have been taken. His engagement is that in such event "he will pay the amount thereof [of the note] to the holder."

The statute contains no provision requiring the indorser "to pay this amount to the holder" at the place where the note is payable. As his contract is separate and independent from the maker's contract, he is liable thereon in the same manner as he would be on any other contract not payable at any particular place.

Before the enactment of section 9526, we held that under the common law an indorser could remove an action to the county of his residence although the note was payable elsewhere. Davis v. Miller, 88 Iowa 114, 55 N. W. 89; Phillips v. Dippo, 93 Iowa 35, 61 N. W. 216, 57 Am. St. Rep. 254; Wright & L. Oil & Lead Mfg. Co. v. Kleigel, 70 Iowa 578, 31 N. W. 878; McDaniels v. Wheeler, 64 Iowa 678, 21 N. W. 135. ·Under the common-law doctrine as announced in Davis v. Miller, 88 Iowa 114, 55 N. W. 89, it was held that although the contract of the maker provided for the payment of the note at a particular place, the contract of the indorser does not require him to pay at the place of payment fixed in the note, 'if he does not reside in the county in which the note is payable. In Davis v. Miller, supra, loc. cit. 117, we said:

"Appellant claims that section 2581 [now 11040] of the Code authorized the bringing of the action in Jones county. That section is as follows: 'When, by its terms, a written contract is to be performed in any particular place, action for a breach thereof may be brought in the county wherein such place is situated.' Whether the claim of appellant is well founded depends upon the nature and extent of the obligation created by the indorsement. *An indorsement constitutes a new agreement with the indorsee, by which the indorser agrees that the instrument will be paid at maturity, and, if it is not so paid upon proper demand, that he will pay it, if duly notified of the default.* * * * 'The maker binds himself to pay at

the place named in the note for payment, and there his contract is to be performed. The indorser promises, upon certain conditions, which are not expressed in the contract of indorsement, but which are implied by law, that he will pay the note, *but not that he will pay it at the place named in the note for payment.* * * * ' We are of the opinion that the rule of law, as thus stated, is correct, and supported by the authorities. Applying it to the facts in this case, we must hold that the contract of the appellee *does not require* him to pay the note at Anamosa. The contract of the maker required him to pay it at that place; *but the contract of the indorser, upon which the appellee is sought to be held, does not specify the place of performance.*" (Italics ours.)

In Phillips v. Dippo, 93 Iowa 35, 61 N. W. 216, 57 Am. St. Rep. 254, we said:

"It was held that the blank indorsement of a negotiable promissory note payable by its terms at a designated place did not require the indorser, when his liability became fixed, to pay the note at that place. * * * In other words, *it was held that implied obligations created by the blank indorsement relate to the time and amount, but not to the place, of payment.*" (Italics ours.)

In Wright & L. Oil & Lead Mfg. Co. v. Kleigel, 70 Iowa 578, 31 N. W. 878, we said:

"An action brought against persons not parties to a written contract [an indorser in this state is not a party to the contract], on the ground that they have become liable to perform the conditions thereof, *cannot be brought in a county where the defendants do not reside,* even though the contract was by its terms to be performed in such county." (Italics ours.)

"The contract of the maker of a note is governed by the law of the place of payment; it by no means follows, however, that the contract of the indorser is governed by the same law. The maker binds himself to pay at the place named in the note for payment, and there his contract is to be performed. *The indorser promises, upon certain conditions,* which are not expressed in the contract of indorsement, but which are implied by law, *that he will pay the note; but not that he will pay it at the place named* in the note for payment. [Italics ours.] This promise is general for the payment of the note upon the implied conditions. * * * The indorsement

is a separate and substantive contract, and is not necessarily controlled by the place of payment named in the note." 3 R. C. L. 1149, section 365.

It is conceded by the defendant that, under the common law and before the adoption of the Negotiable Instruments Act in this state, the plaintiff's contention would be correct, and that he would be entitled to a change of place of trial, to the county of his residence.

In construing the provisions of this act with reference to its applicability to the facts in this, or any case, it must be remembered that the act, in most respects, is simply a codification of the common law, or law merchant, on that subject, and that its purpose is to so codify the law on this subject as to make it uniform. 8 C. J. 47; Wettlaufer v. Baxter, 137 Ky. 362, 125 S. W. 741, 743, 26 L. R. A. (N. S.) 804. In the latter case the court said:

"It [the Negotiable Instruments Act] is with few exceptions merely the codification of old laws that were in force and effect by virtue of judicial pronouncement or legislative enactment, and generally uniform. In many of the states, including our own, there was very little statutory law on the subject of bills and notes previous to the passage of this act. Some of these statutes were not uniform, nor indeed were the opinions of the courts altogether in harmony."

It is the settled law that where the language of the act is clear and unambiguous as to its meaning, it must control, whatever may have been the prior statutes or decisions under the common law on that subject. 8 C. J. 49. If there is no inconsistency between the statute and the common law, as followed prior to the enactment of the Negotiable Instruments Act, then the act does not repeal the former rulings under the common law.

Repeals by implication are not favored, and this rule is applicable to the Negotiable Instruments Act as well as others. The statute will not be construed as repealing former rulings unless there is such a repugnancy between the two that they cannot be consistently reconciled. 8 C. J. 50, section 47; 36 Cyc. 1071; Perry Sav. Bank v. Fitzgerald, 167 Iowa 446, 149 N. W. 497.

A careful analysis of the act clearly shows that the implied agreement heretofore existing under the common law was made statutory; it simply expresses in writing the obligations which an

958

indorser impliedly assumed under the common law. Davis v. Miller, 88 Iowa 114, 55 N. W. 89.

The statute is not inconsistent, or in conflict with, the doctrine announced in Davis v. Miller, and other cases referred to. While the indorser's agreement is that the maker of the note will pay the same according to its tenor, it contains no obligation on the indorser to pay the note in that manner. He is only obligated to pay "the amount of the note to the holder" *after certain conditions have been complied with by the holder.* The note constitutes one agreement and the indorsement another. There is no such conflict between the common law rule in this state and the Negotiable Instruments Act as to effect a repeal of the common law doctrine fixing the liability of an indorser.

For these reasons we believe that plaintiff's motion for a change of place of trial should have been granted and sustained.

The writ is therefore hereby sustained.

ALBERT, C. J., and STEVENS, ANDERSON, MITCHELL, and KINDIG, JJ., concur.